First Federal Savings & Loan Assn., Appellant, *v.* Ansell et al., Appellees.

(No. 434—Decided October 28, 1941.)

*Mr. Columbus Ewalt,* for appellant.
*Mr. Robert L. Carr,* for appellees.

Sherick, J.   This action grows out of a judgment by confession obtained by plaintiff upon a promissory note. The note is for $400. The judgment entered was for $393.18. Thereafter and within term the judgment was vacated and defendants were permitted to plead. This they did by answer and cross-petition. It is averred in substance, that on April 11, 1934, plaintiff

had a mortgage loan on its home property, which plaintiff desired to have refinanced by the Home Owners' Loan Corporation. To that end, plaintiff agreed with the corporation to accept the sum of $1,065.95 in bonds in full settlement of its obligation and to cancel its mortgage. At the same time plaintiff required defendants to execute the $400 note sued upon, which sum represented the deficit of their mortgage loan over and above what plaintiff received from the corporation, which had no knowledge of the subsequent agreement. It is further pleaded that defendants paid the sum of $122.14 on this note, and that this sum was illegally collected. Defendants prayed that plaintiff's note be declared null and void, and for judgment in the sum of $122.14 with interest from the date of the last payment thereon.

Plaintiff in its answer to the cross-petition admits the facts, but denies the corporation's lack of knowledge of the subsequent agreement and that the transaction and partial payment was illegal.

Upon trial other pertinent facts are conceded to be true. The mortgage debt amounted to $1,576.23, and the mortgagee agreed "to accept in full settlement" of its claim, a sum computed in accordance with the method of refunding mortgages provided by the Home Owners' Loan Act of 1933 and the rules promulgated by the Board of Directors of The Home Owners' Loan Corporation, which are conceded to have as full force and effect as the act itself. The corporation's appraisal of the property was $1,550, and its loan, in accordance with its rule, would be and was $1,240, or 80 per cent of its appraisal, but "subject to taxes and loan costs." The refinancing loan made was for $1,240. This sum, less taxes and loan costs, which appellant accepted and received actually amounted to $1,065.95.

It is further conceded as a fact that the subsequent transaction was not tainted by fraud, duress or collusion and that the corporation did not give its consent

to the execution of the subsequent obligation, that is, the $400 note. The matter of notice to and knowledge by the corporation is in dispute, concerning which we shall hereinafter have more to say.

The trial court found that the corporation had notice and knowledge, and that the agreed-upon facts were true. It specifically found that the plaintiff, however, had violated the rule of the corporation, providing as follows:

"Where the full amount of the indebtedness on the property cannot be refunded by the corporation, the mortgagee or other lien holder will be permitted to take a second mortgage or second deed of trust if the amount of such second mortgage or deed of trust does not exceed the difference between the corporation's appraisal [$1,550] and the amount of the corporation's first mortgage [$1,240]."

This is to say that when the plaintiff took defendants' note for $400, it exceeded, by $90, the sum it was entitled to take, if the corporation consented thereto, it having had notice and knowledge thereof. By reason of this violation the note was declared to be null and void and judgment was further rendered in defendants' favor for the sum of $122.14, by them paid on the note, plus interest thereon. From this dual judgment, appellant appeals. It is maintained that the trial court erred in respect to both findings. It is urged that the "taxes and loan costs" should have been added to the appraisal of $1,550, and not subtracted from the refunding sum of $1,240, and that had this been done, the note would not have exceeded "the difference" contemplated by the corporation's rule hereinbefore set forth. It is also said that plaintiff's present claim is but a note, and not a second mortgage, and the rule cannot apply. It is finally urged that in any event the court should have gone no further than to declare that defendants were not liable for more than $310 on their note, for which sum plaintiff should have had

judgment. In other words, it is urged that all the trial court did was contrary to law upon the facts found.

Before proceeding to analyze appellant's complaints, another matter must engage our attention. During the course of trial, plaintiff offered certain testimony respecting the preparation and mailing of its letter of February 10, 1934, to the corporation, after it had learned that the loan to be made would be $1,240. This letter, or a copy thereof, which was received in evidence under objection, recited that plaintiff accepted the corporation's proposal "provided Mr. Ansell will give us a promissory note bearing the same rate of interest as your government loan for the balance due us." This letter together with the testimony of appellant's vicepresident is the only evidence in the case that would tend to establish the matter of notice to and knowledge of and consent by the corporation of the subsequent agreement.

After careful examination of this officer's testimony, we are of the opinion that this letter was improperly received in evidence for the reason that it clearly appears from the officer's testimony that "he had no knowledge" (we quote the court's summarization) of the mailing of the letter. This court had occasion in *Hitz* v. *Ohio Fuel Gas Co.,* 43 Ohio App., 484, 183 N. E., 768, to point out that four things are necessary to establish proof of the mailing of a letter, one of which is that it was properly mailed. The evidence in this case makes no proper proof of this fact. A reading of the *Hitz case* will develop this court's reason for so holding. It will not here be restated. We therefore hold in the present instance that the corporation had no notice or knowledge of the subsequent agreement which plaintiff herein seeks to enforce. It cannot then be concluded that the corporation consented to the subsequent obligation.

Did the taking of the $400 note violate the corporation's rule hereinbefore quoted? We think it did. If

plaintiff's theory of construction to be placed on the words "subject to taxes and loan costs"—that is, such sums are to be added to the corporation's appraisal— is adopted, then it must follow, that such sums might in many cases exceed 20 per cent of the appraisal value, and the government agency be required to advance re-funding money in excess of 100 per cent of a property's total value. The answer is to be found in the fact that the primary purpose of the act was to aid distressed home owners and not to relieve mortgagees of frozen assets.

Plaintiff accepted the sum of $1,065.95 in full settlement of its mortgage debt. This sum represented the loan figure of $1,240, less taxes and loan costs. What it has once acquiesced in, to its advantage, should not now be seriously considered when the contrary is urged. It seems to us that the old rule is apropos, that when one has placed his own construction upon his agreement to his advantage, a court thereafter should not place a contrary construction upon it, which would give him an additional unconscionable advantage, just because it becomes profitable to change one's stance. Clearly the rule contemplates that the appraisal value, less 20 per cent, and less "taxes and loan costs," is to be the sum which a mortgagee is to receive. And the "difference" which a mortgagee may secure with the corporation's knowledge and consent is the sum of 20 per cent of the appraisal value. When that sum is exceeded the agreement is void.

It is said that the plaintiff did not have a mortgage, but took only a judgment note. By its terms it was to be paid in monthly installments. If two payments were in arrears, it was all to become due at the holder's option. All of which is to say that if installments were not paid for sixty days, the holder might exercise its power of attorney and by confession of judgment and levy of execution without notice to the debtor, perfect a lien on the refinanced home. The mortgagors had to

begin at once to make these payments or suffer the consequences of accelerated maturity. If they did not pay these monthly installments, their neglect might terminate in the perfection of a second lien on their home, and this lien might be made the cause of action in a suit to marshal liens and subsequent sale of their property.

Did this note's existence, its requirements, and effect of non-payment, have a bearing on the corporation's mortgage? It placed an additional burden of $2 a month on the debtors. This sum, although small, must have been burdensome, because the point was reached when defendants were unable to pay, as is evidenced by the confessed judgment. Payment of these monthly sums might very easily have made it impossible for the debtors to meet the terms of their obligation to the Home Owners' Loan Corporation. It might be suggested that, if the note could be legally written for $2 a month, it might, upon the same theory, have been specified that $20 should be paid monthly. We feel that the natural tendency in such a case, where the corporation is without knowledge and does not consent, is to stifle the beneficial purpose of the act. We think it aptly reasoned in *Meek* v. *Wilson,* 283 Mich., 679, 278 N. W., 731, that it was intended to assist "owners of homes to save their homes from foreclosure by advancing on first mortgages, sums to be used to pay off liens and to lighten the burdens of the home owners. Any benefit that might accrue to the lienholders would be incidental. The H. O. L. C., in refinancing a home owner's obligations, sought to readjust them in accordance with his ability to make payments. The salutary effect of such a readjustment would be nullified if a lienholder were permitted, without regulation, to defeat the purpose of the Home Owners' Loan Act. An agreement exacted by a lienholder which tends to counteract the relief of the home owner sought by the act is con-

trary to the purpose of the act and to the regulations adopted thereunder.''

It was also pointed out in that case that ''contracts which tend to bring about results which the law seeks to prevent are unenforceable.''

It must be remembered that, in this state at least, mortgages are considered as security for a principal debt, and one is in almost every instance accompanied by the other. The corporation's rule clearly contemplated both, even if it did not specifically say so. Can one be heard to say, we took no mortgage security, but only the principal debt, hence we do not come within the rule? When it is remembered that the note was so drawn and of such a character, that upon default it might quickly be made to assume the form of a lien, it becomes clear that plaintiff procured the major half of what the rule forbade. If the fraction accomplishes what the rule prohibited, it becomes just as obnoxious as the whole.

The final complaint is the claimed error in permitting the home owners to recover back the sums paid on the note. This was error, if the parties are equally at fault in participation in the illegal transaction. In that instance they would be *in pari delicto* and neither could recover from the other. But there exists an exception to this rule, which is equally well established. It is known that situations arise from which agreements ensue, where one party sits in the driver's seat, and the other by force of necessity must, to attain an authorized goal, comply with the request of the first party or abandon his opportunity. In such cases the end sought to be attained is a legal one, but in order to reach that station, he is by a mild but effective compulsion required to participate in an act, which by force of public policy is declared to be illegal. In such a case it is obvious that the parties do not contract on equal terms. Desperate necessity motivates the compliance of the one, while power and greed may dominate the other.

Can it be said in such situations that each are in equal fault? Our answer is no. Turning to 12 American Jurisprudence, 735, Section 217, we find this succinct statement of the exception to the general rule:

"Where the law that creates the illegality in the transaction was designed for the coercion of one party and the protection of the other or where the one party is the principal offender and the other criminal only from a constrained acquiescence in the illegal conduct, in such cases there is no parity of *delictum* at all between the parties, and the one protected by the law or acting under compulsion may, at any time, resort to the law to recover money paid, though the illegal transaction is completed."

The Supreme Court of California recently had a like matter before it in *McAllister* v. *Drapeau,* 14 Cal. (2d), 102, 92 P. (2d), 911, 125 A. L. R., 800. It was there held:

"Where parties are *in pari delicto* neither can secure affirmative relief at law or in equity; but where the mortgage debtors executed the secret second lien under threat of foreclosure, and they were not entirely free agents, but acted as any reasonable and prudent man would have acted under the circumstances, they were not *in pari delicto* with the mortgage creditor, and were entitled to secure affirmative relief."

It is our judgment that the trial court did not err in its judgment, which may be and is hereby affirmed.

*Judgment affirmed.*

LEMERT, P. J., and MONTGOMERY, J., concur.