Dorothy Jane SIMPSON, Plaintiff-Appellant,

v.

JEFFERSON STANDARD LIFE INSUR-ANCE COMPANY, Defendant-Appellee.

No. 72–1150.

United States Court of Appeals, Sixth Circuit.

Aug. 25, 1972.

G. A. Piacentino, Marion, Ohio, for plaintiff-appellant; John H. Harpen, Boggs, Boggs & Boggs, Toledo, Ohio, on brief.

J. G. Jamra, Eastman, Stichter, Smith & Bergman, Toledo, Ohio, for defendant-appellee.

Before WEICK and PECK, Circuit Judges and O'SULLIVAN, Senior Circuit Judge.

WEICK, Circuit Judge.

Plaintiff-Appellant has appealed from an order of the District Court granting partial summary judgment in favor of defendant, and from a judgment upon a directed verdict in favor of the defendant at the close of plaintiff's evidence on the remaining issue, in an action to recover the death benefits on a life insurance policy containing provisions for waiver of premium in the event of total and permanent disability.

Jurisdiction of the Court was based on diversity of citizenship. The case is governed by Ohio law.

Plaintiff was the widow of Paul Gemmill Simpson, Jr., and the named beneficiary in a decreasing term life insurance policy numbered 1 905 618 on his life, which was issued in Marion, Ohio on January 25, 1965 by the defendant company through a local agent, one Jay P. Isaly. (The policy was originally purchased in February of 1964 but was amended in 1965 to the present policy.)

This policy provided that in consideration of the payment of a quarterly premium of $14.23 for a period of 30 years, Simpson's life was insured for a sum certain; included in said premium were the premiums charged by the company for waiver of premium in the event of total and permanent disability as defined in the policy.

All premiums until the one due on April 25, 1968 were timely paid. Defendant, through an affidavit of its Second Vice-President and Associate General Counsel stated that the quarterly premium notice for the premium due April 25, 1968 was mailed on April 5, 1968 to plaintiff at his residence in Painesville, Ohio. Until May 6, 1968 plaintiff and her husband had resided in Painesville, but on May 8, 1968 they moved to Columbus, Ohio. Plaintiff, by affidavit, states that the notice of the premium due on April 25, 1968 was never received.

On May 20, 1968 the insured became seriously ill and on May 24 entered Grant Hospital at Columbus, Ohio. On May 25 the insured was confined to the hospital's intensive care unit in an oxygen tent and was completely disabled. On May 26, a tracheotomy was performed and he died on May 30, 1968. According to the Death Certificate, the immediate cause of death was pulmonary edema (3–4 hours) as a consequence of bilateral lobar pneumonia (10–11 days). A contributory cause of death was coronary atherosclerosis. He was attended by a physician May 23, 1968–May 30, 1968.

The insurance policy contained a 31-day grace period which expired on May 25, 1968. The policy's disability clause specified that "Disability shall be deemed total when the insured is prevented thereby from engaging in any occupation or employment whatsoever for remuneration or profit. Such total disability shall be presumed to be permanent . . . when it is present and

has existed continuously for not less than six consecutive months." It also specified that complete loss of use of both eyes, hands, feet or one hand and one foot was total disability.

Shortly after the expiration of the policy's grace period, the Company mailed a "Late Remittance Offer" to plaintiff's Painesville home, which offer was to expire on June 10. The day following receipt, June 4, plaintiff paid the $14.23 pursuant to this offer by money order. Shortly thereafter, after cashing the money order, defendant tendered this payment back to the plaintiff and denied liability under the policy.

A few days after the death of Mr. Simpson, agent Jay P. Isaly, on his own initiative, went to plaintiff's temporary residence in Marion, Ohio, obtained the death certificate from Mrs. Simpson, had plaintiff sign an agent of record form and sent these papers to the defendant's Columbus, Ohio branch office. He also called that office shortly thereafter for the necessary forms but they were not sent to him or to the plaintiff. Although the defendant company's formal agency relationship with Isaly had terminated on August 31, 1967, nevertheless with the consent of the company he had continued to service that company's policies which he had previously solicited, and he had a monetary interest in each premium paid on these policies.[1]

I

Ohio law requires that an insurance company give notice of a premium due to "the person whose life is insured." In addition, the Ohio legislature has changed the common law in O.R.C. § 3909.07 and has made proof of mailing of such a premium-due notice conclusive proof of its receipt:

"Proof of the mailing of the notice to the policyholder, assignee, or owner by the company or its agent, to the last address as given by the policyholder, assignee or owner to the com-

---

1. The Company never advised Mrs. Simpson of the termination of Isaly's agency relationship with it.

pany, is conclusive proof of its service."

The District Court in granting partial summary judgment for defendant, held that the affidavit of the Company's Second Vice-President Koonts was sufficient to establish mailing of the notice, and thus that the conclusive presumption took effect. The portion of Koonts' affidavit relevant to this mailing, to wit, sections 3 and 4, state as follows:

"3. On April 5, 1968, defendant mailed the notice for the quarterly premium due April 25, 1968 to the insured, Paul Gemmill Simpson, Jr., at his residence address of 6145 Althea Drive, Painesville, Ohio.

4. Said mailing address was the same address to which defendant mailed all previous quarterly premium notices for the quarterly premiums due from and after October 25, 1966. . . . "

Plaintiff Simpson, in her affidavit, denied receipt of the premium due in April, 1968.

■ Where the Supreme Court of a state has not spoken on an issue, it is the duty of the federal courts to ascertain how the highest state court would decide the question; decisions of intermediate state courts must be followed by the federal court unless there is reason to believe they would not be followed by that state's highest court. Moore's Federal Practice, 2d ed., § 0.307(1) p. 3301 et seq.; West v. American Tel. & Tel., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Gettins v. United States Life Ins. Co., 221 F.2d 782 (6th Cir. 1955).

■ Ohio law clearly dictates that if notice was not given here, the insurance cannot be declared forfeited. Manhattan Life Ins. Co. v. Smith, 44 Ohio St. 156, 5 N.E. 417 (1886); Gleason v. Mass. Mutual Life, 43 F.Supp. 824 (N. D.Ohio 1942).

■ Under the common law rule, which Ohio has followed, to establish mailing in order to benefit from the presumption that a letter has been received, proof of three things was required: That (1) the letter was properly addressed, (2) had sufficient postage and (3) was properly deposited in the mails. Wigmore on Evidence, 3rd ed. § 95 p. 524; 21 O.Jur.2d § 123; 30 Am.Jur.2d § 1116 p. 283.

"Ordinarily, the deposit of a notice of cancellation in the mail would be delivered to the insured at the address stated in the policy, and it has been held that proof of the mailing of a letter properly stamped and addressed affords prima facie evidence of its receipt by the addressee." Griffin v. General Accident Fire and Life, 94 Ohio App. 403, 410, 116 N.E.2d 41, 45 (1953).

"It must be remembered that when it is sought to prove the preparation and mailing of a document, four things must be shown. They are the instrument's execution, its inclosure in a proper container correctly addressed and stamped, that it was placed in the mails, and, where time is of the essence, that it was mailed in time." Hitz v. Ohio Fuel Gas Co., 43 Ohio App. 484, 490, 183 N.E. 768, 770 (1932).

Nevertheless, evidence that a letter was not received was generally regarded as sufficient to rebut this presumption and create a jury issue, for the presumption was one of fact. 21 O.Jur.2d § 134 p. 145; 20 Am.Jur. 200, Evidence § 201; 29 Am.Jur.2d Evidence § 193 p. 246. But under O.R.C. § 3909.07 the Ohio legislature made this presumption of receipt conclusive, to preclude litigation of whether or not a premium notice has been received once mailing was established.

■ A distinction, however, must be made between the issue of whether or not the letter was received and whether or not it was mailed. Under O.R.C. § 3909.07 *mailing* must be proved and when that is done receipt is established. And testimony of non-receipt is some evidence of non-mailing.

"But suppose that the addressee testifies in *denial* of the *receipt*? If this denial be believed, then is not the nonarrival of the letter some evidence that it was never mailed? The presumption . . . (of receipt) rests upon the supposed uniform efficiency of the postal service in delivering letters duly stamped, addressed, and mailed into its custody; if therefore the efficiency is operating, does not the non-arrival of an alleged letter indicate that such a letter was never given into the postal custody? Add to this, that the testimony to mailing comes usually from the mouth of persons who are vitally self-interested in proving the fact of mailing . . ." Wigmore on Evidence, 3rd ed. § 2519 pp. 432–3. See also 29 Am.Jur.2d 246, Evidence, § 193.

■ Although we find no Ohio case directly in point, we feel that this states the preferred rule, and the one which the Ohio courts would adopt if faced with the question. Consequently, we hold that the District Court erred in granting summary judgment for the defendant on this issue, for the plaintiff's affidavit of non-receipt created an issue of fact as to whether or not the premium notice was mailed.

Under the Ohio common-law rule prior to O.R.C. § 3909.07, Koonts' affidavit is insufficient to invoke the presumption of receipt for it does not establish that he had personal knowledge of the fact that the letter was mailed, that it was properly addressed or that it had proper postage.

■ This is not to say, however, that proof of mailing can be made only by testimony of one who personally mailed the letter and saw the address and postage on it. Under modern business procedures such proof could seldom be made. Both Ohio and federal courts recognize that proof of a business system of preparing and mailing letters, and compliance with such a custom in the particular instance, is sufficient to establish proof of mailing. Knicker-bocker Life Ins. Co. v. Pendleton, 115 U.S. 339, 6 S.Ct. 74, 29 L.Ed.2d 432 (1885); Myers et al. v. Moore-Kile, 279 F. 233 (5th Cir. 1922); United States v. Decker, 51 F.Supp. 15 (D.Md.1943); Freeman v. United States, 20 F.2d 748 (3rd Cir. 1927); United States v. Vandersee, 279 F.2d 176 (3rd Cir. 1960); 30 Am.Jur.2d, Evidence § 1119, p. 284.

Ohio law, as enunciated by its appellate courts, accommodates the proof needed to establish mailing to modern business practices. Hitz v. Ohio Fuel Gas Co., 43 Ohio App. 484, 490–491, 183 N.E. 768 (1932).

A later case indicates that any representative of a business must have some knowledge of the mailing of the letter. In First Federal Savings and Loan Ass'n v. Ansell, 68 Ohio App. 369, 41 N. E.2d 420 (1941) the appellant company's vice-president testified as to the mailing of a letter to establish notice of the agreement it sought to enforce. The court held, however, that there was no proper proof of mailing "for the reason that it clearly appears from the officer's testimony that 'he had no knowledge' . . . of the mailing of the letter." 68 Ohio App. 372, 41 N.E.2d 422.

■ Thus it is apparent to us that the Ohio courts would regard the affidavit of Second Vice-President Koonts not only as inadequate proof to permit the defendant to benefit from the common-law presumption if the question involved were receipt of notice, but also, where the issue is whether or not the mailing occurred, the affidavit by itself is insufficient to establish proof of the mailing of the letter. *Hitz, supra*; First Federal Savings and Loan Ass'n v. Ansell, *supra*.

## II

In consideration of the payment of a premium of $1.73 each year, the policy contained a clause waiving payment of premiums in the event of total and permanent disability. The District Court held that the insured had become disabled as defined by the policy, but that

two additional necessary conditions for waiver had not been established, namely, the disability did not endure for the stated time period, and due proof of disability had not been presented to the company. The Court relied on Western and Southern Life Insurance Co. v. Smith, 41 Ohio App. 197, 180 N.E. 749 (1930) and Knight v. New England Mutual Life Insurance Co., 74 Ohio App. 211, 57 N.E.2d 131 (1942).

We do not read the policy as requiring the disability to exist for a stated time. All that the policy requires is that the insured be totally and permanently disabled. In this respect the policy provides:

"Such total disability shall be presumed to be permanent (but only for the purpose of determining the commencement of liability hereunder) when it is present and has existed continuously for not less than six consecutive months."

█ █ It will be noted that such provision applies only for the purpose of determining the commencement of liability and then it creates a presumption. In the present case, the commencement of liability was determined by the undisputed facts. Simpson was totally and permanently disabled when he was admitted to Grant Hospital and he died within six days thereafter. It was not necessary to invoke a presumption.

In Western & Southern Life Insurance Co. v. Smith, *supra*, the Court lamented that it did not have before it the insurance contract but was determining the issues on what the parties had set forth in their pleadings. The Court construed the disability rider as providing that "if the insured becomes wholly disabled and such disability continues for ninety days prior to proof of such disability, such waiver cannot be invoked unless it be shown that both of these conditions have been satisfied."

The policy in the case at bar contains no such conditions. It provided merely for waiver "after commencement of and during the continuance of total and per-

manent disability of the insured." The premium did not become due until the end of the grace period. The presumption period did not establish a minimum durational period to a qualifying disability. In our judgment, the insured's serious illness and demise could qualify as a total and permanent disability without lasting six months. Neither of the cited cases support the insurer. We find no Ohio cases dealing with the precise issues involved in the present case.

It is well established in Ohio that policies of insurance written by the insurer are liberally construed in favor of the insured and strictly construed against the insurer. 30 O.Jur., Insurance, § 216, p. 227. If the policy is reasonably susceptible to two different interpretations, the one most favorable to the insured will be adopted. Stuhlbarg v. Metropolitan Life Ins. Co., 143 Ohio St. 390, 55 N.E.2d 640 (1944); Great American Mutual Indemnity Co. v. Jones, 111 Ohio St. 84, 144 N.E. 596 (1924); Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928). In our opinion, the interpretation which we have given to the policy is the only reasonable one which can be given to it.

In Commonwealth Life Ins. Co. v. Francis, 278 Ky. 343, 128 S.W.2d 742 (1939) the insured had a policy with a waiver clause that provided for waiver of premiums "upon receipt of due proof that the insured has become totally and permanently disabled and that such disability has already continued uninterruptedly for a period of at least four months. . . ." The insured became ill on September 9, 1936, and died on October 8, 1936. The Court held that the waiver of premium provision was operative.

"The obvious purpose of the waiver provision is to waive payment of a premium which the insured and the company contemplate the insured will likely be unable to pay on account of sickness or other disability. Exactly that situation existed here, where the insured was in bed a month, rendering likely her inability to pay during that

time, followed by death, making absolute and certain her inability for the remainder of the four months' period . . .

. . . Death is the most total and permanent of all disabilities preventing the insured from engaging in any business or occupation." (*Id.* at 346, 128 S.W.2d at 744)

In another case involving a waiver clause similar to the one in the Simpsons' policy, the disability commenced during the grace period followed closely by death; recovery was upheld. The Court stated that:

"However much the legal mind may differ as to the meaning of these provisions, the ordinary layman would construe them to mean that, in the event he became disabled before his premium fell due, his insurance would be continued until his disability was removed or until his death. That is the natural and reasonable construction to be placed upon the language used in this policy. . . .

. . . To give the insured the full benefit of his policy, and carry out the intention which was doubtless in the minds of the contracting parties when the policy was written, his policy should not be allowed to forfeit where his disability occurs during the grace period of his policy and continues until his death. Any other construction would be a harsh one and deprive him of a right for which he had paid the insurance company, and which he could only enjoy by employing in advance some agent to protect for him." Minnesota Mut. Life Ins. Co. v. Marshall, 29 F.2d 977, 978 (8th Cir. 1928).

The reasoning of these cases supports our view that the insured's condition qualified as a total and permanent disability within the terms of the policy. He became ill on or shortly before May 20, 1968, entered the hospital on May 24 and on the next day was confined to the hospital's intensive care unit. Indeed, the fact of his total disability is not in dispute; Simpson obviously could not engage in any occupation or employment for remuneration or profit. And all this occurred within the policy's grace period. Then, without ever recovering, Paul Gemmill Simpson, Jr., died on May 30, 1968, a few days after expiration of the policy's grace period. Thus, we think that Simpson's illness and death constituted a total and permanent disability within the meaning of the policy, particularly where the policy did not establish a minimum period for "permanent" disability. And we are of the opinion that the Ohio courts would be of the same view if faced with the question.

III

■ The appellee correctly points out that the policy requires that notice of disability be given to it in order for the waiver to become effective. The notice provision reads as follows:

"Written notice of claim and due proof of total and permanent disability of the insured must be received by the Company at its home office:

(a) during the lifetime of the insured;

(b) during the continuance of total and permanent disability;

(c) not later than one year after the anniversary of the policy date nearest the insured's 60th birthday.

Failure to give such notice and proof within such time shall not invalidate any such claim if it shall be shown that such notice and proof were given as soon as was reasonably possible."

The appellee argues that the plaintiff failed to comply with these conditions, and that therefor the waiver of premium payments never became effective. In fact, the company maintains that institution of this suit and service of the complaint on it is its first notification of the disability, and was not given until more than 12 months after the due date of the last premium.

We are of the opinion that notice and proof of disability were given as soon as

was reasonably possible. Within a week after Mr. Simpson's death, agent Isaly contacted Mrs. Simpson who was temporarily at her sister's home in Marion, Ohio. He picked up a death certificate from her and mailed it to the company's branch office in Columbus.[2] This death certificate indicated that the cause of death was "Bilateral lobar pneumonia," of a duration of "10–11 days." It further showed that the deceased's physician attended him beginning on May 23, 1968 until his demise. Thus, at a minimum, the defendant company knew that the insured who died on May 30, 1968 had contracted the disease which resulted in his death at least five days prior to the expiration of the policy's grace period.

The facts of the instant case are strikingly similar to those in the case of Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 161 A.2d 717 (1960), second appeal 37 N.J. 593, 182 A.2d 855 (1962). The insured died on April 22, 1958, after the March 21 premium had not been paid and one day after the policy's grace period had expired. The policy had a supplemental disability waiver of premiums clause which contained a notice provision nearly identical to that in Simpsons' policy. The policy provided that an insured was totally disabled when he "is and will be continuously and wholly prevented thereby from performing any work or transacting any business for compensation or profit and that such disability has already continued uninterrupted for a period of at least six months . . . ." The court spoke of notice which would be sufficient under the policy and its requirements were clearly met here:

"   .   .   .   [N]otice of death and proof of loss would fairly suffice to meet the needs of the insurer. If a claim is made for the policy proceeds, the insurer knows it must pay (1) if the premiums were paid or (2) if pay-

ment of premiums were waived. It is not too much to require the company to make inquiry with respect to waiver if it appears that the premium was not paid." (182 A.2d 855 at 856).

The agent for the defendant insurer promptly filed notice of death with his company thereby notifying it that (1) the insured died *one day* after the expiration of the grace period and (2) the insured succumbed from pneumonia which, at least usually, does not lead to a sudden death. Thus, the defendant knew within a few days that the insured died of illness which as a high probability had disabled the insured within the grace period. The insurer could hardly ask for more to alert it to its obligation under the *waiver of premium payment provision*." (182 A.2d 857).

We agree that in this case Mrs. Simpson's transmission of the death certificate to the company, through its agent Isaly, containing the information hereinbefore related constituted written notice of claim and due proof of total and permanent disability, and that such notice and proof complied with the policy provisions.

As well stated by the Court in Kampf v. Franklin Life Ins. Co., *supra*:

"It was not reasonably possible for the insured to give notice during his brief period of disabling and fatal illness, and in any event he could not be charged with knowledge that he would succumb within a matter of days. And obviously enough, the provision must be read to excuse notice by the insured when death occurs before he could fairly be said to have defaulted in his obligation to give notice." (182 A.2d at 856). See also Swann v. Atlantic Life Ins. Co., 156 Va. 852, 159 S.E. 192 (1931); McCoy v. New York Life, 219 Iowa 514, 258 N.W. 320 (1935); Lenkutis v. New

---

2. In addition to this notice, Mr. Isaly contacted the Columbus branch office of defendant in July, and later spoke with one Mr. Whitlow in the death claims office to ascertain why the claim had not been processed. And once in August, 1968, and again in January of 1969 plaintiff's attorney sent inquiries to the company indicating that the plaintiff felt that the insurance was in force at the time of the insured's death.

York Life, 374 Ill. 136, 28 N.E.2d 86 (1940); Minnesota Mutual Life Ins. Co. v. Marshall, 29 F.2d 977 (8th Cir. 1928); Kingsford v. Business Men's Assurance, 57 Idaho 727, 68 P.2d 58.

We hold that the uncontroverted evidence established that Simpson was totally and permanently disabled during the grace period of the policy so as to be entitled to a waiver of premiums, and that the policy provisions relative to written notice of claim and due proof of total and permanent disability were fully complied with.

Since plaintiff made out a case for recovery of the policy benefits, it follows that the Court erred in directing a verdict in favor of the defendant. It also erred in granting partial summary judgment on the mailing issue.

The judgment of the District Court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.