**AETNA LIFE INSURANCE CO., Plaintiff,**

v.

**Michelle MONTGOMERY a/k/a Michelle Horne and Cynthia Montgomery, Defendants.**

No. 02–CV–73190–DT.

United States District Court, E.D. Michigan, Southern Division.

Sept. 23, 2003.

---

Francis R. Ortiz, Dickinson Wright, Bloomfield Hills, MI, for plaintiff.

Gad L. Holland, Detroit, MI, for Michelle Montgomery, defendant.

Dan T. Ryan, Warren, MI, Donald E. Mbamah, Mbamah & Jones, Southfield, MI, for Cynthia Montgomery, defendant.

## OPINION AND ORDER REGARDING DEFENDANTS' CROSS–MOTIONS FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION

This insurance interpleader action is presently before the Court on the cross-motions for summary judgment filed by Defendant Michelle Montgomery, a/k/a Michelle Horne, and Cynthia Montgomery, both of whom claim entitlement to the proceeds of an Aetna group life insurance policy insuring the life of decedent, Michael Montgomery. Michelle Horne is Michael Montgomery's ex-wife. Cynthia Montgomery was married to Michael

Montgomery at the time of his death. On December 20, 2002, the Court entered a stipulated Order allowing Plaintiff Aetna Life Insurance Company ("Aetna") to deposit $125,000, the amount of proceeds payable under the group life insurance policy, with the Clerk of the Court. The Order further discharged Aetna from any claims for insurance benefits and dismissed the insurer from this action. Therefore, in its present posture, this case presents only a dispute between the two Defendant–Claimants.[1]

Having reviewed and considered the Defendants cross-motions, briefs and supporting documents—including the post-hearing supplemental briefs filed by the parties at the Court's direction—and further considered the oral arguments of counsel, the Court is now prepared to rule on this matter. This Opinion and Order sets forth the Court's ruling.

## II. *FACTUAL BACKGROUND*

The decedent-insured, Michael Montgomery, died on May 9, 2002. At the time of his death, Mr. Montgomery was an employee of DaimlerChrysler Corporation. As a Daimler–Chrysler employee, in January 1989, Mr. Montgomery elected to obtain Optional Employee Group Life Insurance on his life in the amount of $100,000. *See* Horne Ex. A. This insurance was paid through payroll deductions from Mr. Montgomery's wages.[2]

Defendant–Claimant Michelle Montgomery, a/k/a Michelle Horne,[3] is Michael Montgomery's ex-wife. When Mr. Montgomery obtained the Optional Employee Group Life Insurance in January 1989, he and Ms. Horne were married. Ms. Horne, then known as Michelle Montgomery, was named as the decedent's beneficiary on the life insurance policy. *See* Horne Ex. A. Michael and Michelle were divorced in February 1996. *See* Horne Ex. B.

In October 1996, Michael married Cynthia Montgomery. The couple remained married until Mr. Montgomery's death in May 2002.

Three months after Michael Montgomery's marriage to Cynthia, Michael obtained from Aetna the necessary "plan change" form to designate his new wife, Cynthia, as the sole beneficiary on his Optional Employee Group Life Insurance policy and to increase the amount of insurance from $100,000 to $125,000. Mr. Montgomery executed this form on March 6, 1997. *See* Montgomery Ex. 1; Horne Ex. J. *See also,* Cynthia Montgomery Affidavit, Montgomery Ex. 2, ¶ 7. Defendant Montgomery states that this form was subsequently mailed to Aetna either on March 7 or March 8. *Id.* ¶ 8.[4] Between

---

1. Although no formal "cross-claims" were filed by either Ms. Montgomery or Ms. Horne, the Court directed the parties to file cross-motions for summary judgment setting forth their competing positions and arguments in support thereof, and Ms. Montgomery and Ms. Horne both complied with the Court's directive. Therefore, the Court will treat this matter as if cross-claims had been filed.

2. This life insurance apparently is also referred to as "Supplemental Life Insurance," *see* Horne Ex. G and M. Apparently, Chrysler–UAW employees were provided with Group Life Insurance, *see* Horne Ex. M, p. 2, and had the option of purchasing, through payroll deduction, additional Optional Employee

Group Life Insurance. It is only this latter supplemental insurance that is at issue in this case. There does not appear to be any dispute that Defendant Cynthia Montgomery was the sole beneficiary entitled to collect the $52,000 regular Group Life Insurance benefits, and it appears that she, in fact, has been paid this sum. *See* Horne Ex. M.

3. For the sake of clarity, the Court will refer to Michelle Montgomery by her current name, Michelle Horne.

4. In her Affidavit, Mrs. Montgomery states that on March 7, 1997, the day after her husband executed the change form, she took the original completed and signed form to her

March 6, 1997 and May 9, 2002 (the date of Michael Montgomery's death), Mr. Montgomery took no other action to change either (a) the amount of insurance or (b) his designated beneficiary.

On May 9, 2002, Michael Montgomery died as a result of a motor vehicle accident. His widow, Cynthia Montgomery, made the necessary funeral arrangements. The funeral home subsequently contacted Aetna regarding payment of the life insurance benefits. Aetna advised the funeral home that Mr. Montgomery's ex-wife, Michelle, had already made a claim for those benefits. *Id.* ¶ 10.

The documents submitted by the parties show that Michelle Horne submitted her claim to Aetna on May 21, 2002. *See* Montgomery Ex. F. That same day, Aetna issued a check for $125,000 and, pursuant to the Optional Group Life Insurance plan provisions, deposited that sum in an Aetna Benefits Checkbook account.[5] *See* Montgomery Ex. G.

Meanwhile, Cynthia Montgomery contacted Aetna and submitted to the insurer her own claim for the Optional Group Life Insurance benefits. Cynthia also sent Aetna a copy of the "change form" executed by Michael Montgomery on March 6, 1997, together with a copy of her husband's Default Judgment of Divorce from Michelle Horne. The Judgment of Divorce not only provided that Michael and Michelle's marriage was dissolved as of February 20, 1996, but also provided in pertinent part:

> IT IS FURTHER ORDERED AND ADJUDGED that any rights of either party in any policy or contract of life, endowment or annuity insurance of the other in which the other party is stated to be beneficiary, are hereby extinguished unless specifically preserved by this Judgment.

*See* Horne Ex. B.

The only benefits specifically preserved pertained to Michael's pension. With respect to Michael's pension, the Divorce Judgment provided:

> IT IS FURTHER ORDERED AND ADJUDGED that the Defendant [Michelle Montgomery] is awarded FIFTY (50%) PERCENT of the Plaintiff [Michael Montgomery]'s Pension at Chrysler Corporation from the date of marriage (1–8–77) through February 20, 1996 and [a] Qualified Domestic Relations Order shall be entered and be made a part of this Judgment.

*Id.* No mention is made in the Judgment of Divorce of preserving any of Michelle Horne's rights to Michael's Group Life Insurance benefits.

As a result of Cynthia Montgomery's competing claim to Michael's Optional Group Life Insurance benefits, Aetna placed a "hold" on the Aetna Benefits Checkbook account it had opened with the

---

place of employment to make a photocopy of the form for the Montgomerys' personal records and that she personally mailed the original form back to Aetna, either later that same day (March 7) or the next day. *See* Montgomery Affidavit, ¶ 8.

5. The Benefit Payment provisions of the Chrysler–UAW Optional Group Life Insurance plan provided, in pertinent part, as follows:
 **Benefit Payment**
 If you die from any cause while insured, the insurance amount is paid to your designat-ed beneficiary(ies). For benefit amounts of $10,000 or more, payment will automatically be deposited under the Aetna Benefits Checkbook Program in a free checking account in your beneficiary's name. Your beneficiary may leave the money in the account for as long as he or she wishes and the personalized checkbook allows your beneficiary to easily use all, or a portion of the money. Funds left with the insurance company earn interest at competitive rates. Montgomery Ex. D, p. A 0133.

deposit of $125,000 in Michelle Horne's name. [*See* Complaint for Interpleader, ¶ 12.]

On June 24, 2002, Aetna sent Cynthia Montgomery's attorney a letter advising Mrs. Montgomery of its rejection of her claim to the Optional Group Life Insurance benefits. In pertinent part, Aetna's letter stated as follows:

> This letter concerns the Optional Life Group Life proceeds for Mr. Michael Montgomery. We have received your claim, copy of the divorce decree, and the beneficiary designation dated March 6, 1997.
>
> Based on the information we have received, we must respectfully deny the claim made for the Optional Life proceeds.
>
> Under the DaimlerChrysler Group Policy 6002, it states "that an insured can name or change a beneficiary by filing written request at your Employer's headquarters or at Aetna's Horne Office. The naming or any change will take effect as of the date you execute the request. But Aetna will be fully discharged of its duties as to any payment made by it before your request is received at its Horne Office."
>
> The beneficiary designation dated March 6, 1997 is not a valid designation as it was not on record at our Horne Office and it was not signed or date stamped by an Aetna Representative. [The] DaimlerChrysler contract is under ERISA, therefore the divorce degree [sic] between Mr. Montgomery and Michelle Montgomery dated February 20, 1996, does not remove Michelle Montgomery as a beneficiary. The beneficiary designation dated January 11, 1989, naming Michelle Montgomery is not the Estate and is a valid designation.
>
> To perfect your claim, you would have to provide documented evidence of an Optional Group Life beneficiary designa-

tion form dated after January 11, 1989, naming your client, Mrs. Cynthia Montgomery as beneficiary. This form must be signed and dated by the insured, and acknowledged or date stamped on the date received by an Aetna Representative.

Horne Ex. K.

Despite having made its determination with respect to the competing claims for benefits, apparently Aetna feared being sued by Mrs. Montgomery after rejecting her claim. Therefore, on August 21, 2002, alleging the fear of "expos[ure] to the possibility of multiple liability from adverse claims against the optional life insurance benefits," and deeming itself unable to "safely pay the proceeds to any" claimant, Aetna filed the instant Interpleader action against Michelle Horne and Cynthia Montgomery. By stipulation of the parties, on December 20, 2002, Aetna was (1) allowed to withdraw the $125,000 deposited in the checking account previously established by Aetna for Michelle Montgomery and deposit that entire sum with the Clerk of the Court and (2) dismissed from this action, leaving the Court to resolve Ms. Horne's and Mrs. Montgomery's competing claims for the insurance proceeds.

## III. *DISCUSSION*

### A. *STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT*

Summary judgment is proper " 'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Fed. R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[6] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

> \* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> \* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> \* The trial court no longer has the duty to search the entire record to establish

that it is bereft of a genuine issue of material fact.

> \* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association,* 78 F.3d 1079, 1087 (6th Cir.1996). *See also, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989). The Court will apply the foregoing standards in deciding the cross-motions for summary judgment presently before it.

**B. *THE DIVORCE DECREE WAIVER OF RIGHTS***

As indicated above, the Default Judgment of Divorce included a provision pursuant to which Michelle Horne waived any beneficiary rights she might have had in any of Michael Montgomery's life insurance policies or contracts. In pertinent part, the Default Judgment of Divorce provides as follows:

> IT IS FURTHER ORDERED AND ADJUDGED that any rights of either party in any policy or contract of life, endowment or annuity insurance of the other in which the other party is stated to be beneficiary, are hereby extinguished unless specifically preserved by this Judgment.

*See* Horne Ex. B.

■ It is well-settled, however, that state court divorce decrees and judgments

---

**6.** "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure,* § 2727, at 35 (1996 Supp.).

purporting to affect the benefits payable from an ERISA policy are preempted. *See McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir.1990); *Metropolitan Life Ins. Co. v. Pressley,* 82 F.3d 126 (6th Cir.1996); *Central States SE & SW Areas Pension Fund v. Howell,* 227 F.3d 672, 676–678 (6th Cir.2000). Generally, in such a case, a waiver of rights is ineffective and the ERISA plan administrator is obligated to pay benefits in accordance with the plan provisions and documents. *McMillan, supra,* 913 F.2d at 311–312; *Central States, supra,* 227 F.3d at 676–677.

■ There is, however, one exception to ERISA preemption: ERISA does not preempt state court divorce decrees or judgments where the state court order meets the requirements of a qualified domestic relations order ("QDRO") under 29 U.S.C. § 1056(d)(3).[7] The requirements for a state court order to be treated as a QDRO are set forth in 29 U.S.C. § 1056(d)(3):

> (B)(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of a participant, and (II) is made pursuant to a State domestic relations law (including a community property law).
>
> (C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each

alternate payee covered by the order, (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined, (iii) the number of payments or period to which such order applies, and (iv) each plan to which such order applies.

*See, Central States, supra,* 227 F.3d at 677, quoting 29 U.S.C. § 1056(d)(3).

■ As Defendant–Claimant Cynthia Montgomery acknowledges, the insurance provision in the Judgment of Divorce between Michelle Horne and Michael Montgomery does not comply with the requirements of 29 U.S.C. § 1056(d)(3). Other than naming the parties in the caption of the Judgment, the divorce decree did not provide any of the information required under the statute, i.e., it does not provide either of the parties' addresses, the specific name of the insurance plan or the amount of benefits to be paid by the plan. Since it does not comply with the requirements of Section 1056(d)(3), the Judgment of Divorce does not qualify as QDRO. Therefore, it is not exempt from ERISA preemption. And, as a consequence, Aetna was required to pay the benefits on Michael Montgomery's ERISA Optional Group Life Insurance policy in accordance with the plan provisions.

## C. *THE PLAN PROVISIONS*

The Benefit Payment provisions governing Michael Montgomery's Optional Group Life Insurance policy state, in pertinent part, as follows:

---

**7.** Although the statutory QDRO exception to preemption addresses only pension plans, the Sixth Circuit has determined that 29 U.S.C. § 1144(b)(7) excepts QDROs from ERISA preemption with respect to *both* pension plans and welfare benefit plans. *Metropolitan Life Ins. Co. v. Marsh,* 119 F.3d 415, 421 (6th Cir.1997); *Central States, supra,* 227 F.3d at 677.

If you die from any cause while insured, the insurance amount is paid to your designated beneficiary(ies)....

You may designate or change your optional group life beneficiary at any time by making a written request to your local Personnel Department or to the Aetna Detroit office....

Your local Personnel Office has the necessary forms. *Any change of beneficiary becomes effective the date you sign the request, unless the insurance company has paid a benefit before it receives the signed form.*

Horne Ex. D, p. A 0133 (emphasis added).

As indicated above, when Michael Montgomery originally enrolled in the Optional Group Life Insurance plan in January 1989, he requested life insurance under "Plan 7" in the amount of $100,000, and designated his then wife, Michelle (Montgomery) Horne, as his beneficiary. *See* Horne Ex. A. Eight years later, after Michael and Michelle were divorced and Michael had married Cynthia, Michael signed a "plan change" form, on March 6, 1997, changing his beneficiary on his Optional Group Life Insurance policy to Cynthia Montgomery, and increasing his insurance coverage to "Plan 8" coverage in the amount of $125,000. Cynthia Montgomery has provided her sworn affidavit stating that she personally mailed Michael's signed "plan change" form to Aetna on March 7 or 8, 1997. *See* Montgomery Affidavit, ¶ 8. Although Mrs. Montgomery is not certain, she believes that she mailed the form back to Aetna in a preaddressed return envelope that had been supplied by Aetna. *Id.* Aetna, however, has refused to honor this change form because it did not have a copy of the change form in Michael Montgomery's file on May 9, 2002 (the date of his death), *see* Horne Ex. L, and Mrs. Montgomery did not produce a copy of the signed and dated form "acknowl-

edged or date stamped on the date received by an Aetna representative." Horne Ex. K.

As an initial matter, the Court notes that there is nothing in the plan documents requiring that to be effective, a plan change form must be acknowledged or date stamped with the date received by Aetna. Rather, as indicated above, any change of beneficiary automatically becomes effective the date the plan participant signs the request, unless Aetna has paid a benefit before it "receives" the signed form.

 The common law "mailbox rule" applies in determining when an ERISA plan administrator "receives" a required form. *See Schikore v. BankAmerica Supplemental Retirement Plan,* 269 F.3d 956 (9th Cir.2001); *Barrs v. Lockheed Martin Corp.,* 287 F.3d 202, 210 (1st Cir.2002). Under the common law mailbox rule, the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time. *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *Simpson v. Jefferson Standard Life Ins. Co.,* 465 F.2d 1320, 1323 (6th Cir.1972); *Bratton v. Yoder,* 758 F.2d 1114, 1118 (6th Cir.1985); *Schikore supra,* 269 F.3d at 961. If the sender shows enough evidence to raise the presumption, then the other party bears the burden of showing that the document never arrived. *Id.* at 963. Merely stating that the document is not in the addressee's files or records—which is all that Aetna has done in this case—is insufficient to defeat the presumption of receipt. *See id.* at 963–64 (applying the common law mailbox rule where a retirement plan claimed it never got an employee's form for ERISA benefits).

As the *Schikore* court found, the application of the mailbox rule is consistent with the purposes of ERISA, the central purpose of which is to "protect the interests of participants in employee benefit plans and their beneficiaries." 269 F.3d at 963, quoting 29 U.S.C. § 1001(b) (congressional findings and declaration of policy.). *See also, Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

Because the mailbox rule creates a rebuttable presumption, the Court must determine whether Mrs. Montgomery has presented sufficient evidence of mailing to invoke the presumption of receipt and, if so, whether sufficient evidence of non-receipt has been presented for Ms. Horne to rebut the presumption.

▮ A sworn declaration that the required form was mailed is credible evidence of mailing for purposes of the mailbox rule. *Schikore, supra,* 269 F.3d at 964. *See also, Simpson, supra* (affidavit stating that based on personal knowledge, letter was mailed, was properly addressed and had proper postage is sufficient to invoke the presumption of receipt under the common law mailbox rule). Mrs. Montgomery has submitted a sworn affidavit in this case attesting to her mailing of her late husband's "plan change" form on March 7 or March 8, 1997. This is sufficient evidence of mailing to invoke the presumption that Aetna received the form.

The only evidence of non-receipt proffered in this case is Aetna's Response to Ms. Horne's Request for Admissions. In her Request for Admissions, Ms. Horne asked Aetna:

Please admit that the optional employee and dependent group life insurance enrollment form (Exhibit A) was not in the Michael Montgomery file (SS# 367–54–

3646) and/or possession or control of plaintiff on May 9, 2002.

*See* Horne Ex. L.

In response, Aetna stated:

Plaintiff admits only that Plaintiff's file did not contain a copy of Exhibit A on May 9, 2002.

*Id.*

However, the mere fact that the form was not in Michael Montgomery's file is insufficient to rebut the presumption of receipt by Aetna. As the *Schikore* court observed,

Permitting a retirement plan to find non-receipt simply on the basis that the records office cannot find the document, although there is evidence of mailing, is inconsistent with ERISA's purpose to protect employee rights.... The function of the mailbox rule in this context is to provide employees with a guarantee that, if the retirement plan claims not to have received a document that an employee mailed, the document will nevertheless be presumed to have been received by the plan unless the plan can produce probative evidence of non-receipt. At the very least, this requires a plan to describe in detail its procedures for receiving, sorting, and distributing mail, to show that these procedures were properly followed at the time when the document in question might conceivably have been delivered by the postal service, to provide evidence that it has conducted a thorough search for the document at the addressee's physical facility, and to establish that had the document been received around the time the claimant asserted it was mailed, it would presently be at the location searched by the Plan Administrator.

... There is nothing in [the] record to suggest that the Administrator conducted any fact-finding beyond that of "confirming" with the Third–Party Administrator that Schikore's form was not

currently on file at the Retirement Plans Service Center.

269 F.3d at 964.

■ By application of the foregoing authorities, the Court finds that Ms. Horne has not sufficiently rebutted the presumption of receipt created by the credible evidence of mailing presented by Mrs. Montgomery. The Court is particularly persuaded that Aetna's mere assertion that Mr. Montgomery's "plan change" form was not in its file on May 9, 2002 is insufficient in this case because it was on that same March 6, 1997 "plan change" form that Mr. Montgomery for the first time increased his insurance from $100,000 to $125,000. Had Aetna not "received" the March 6, 1997 form, it would not have known that Mr. Montgomery had increased his insurance to $125,000 and would have paid Ms. Horne $100,000—the amount indicated on Mr. Montgomery's original enrollment and designation of beneficiary form.[8] Yet it is for the sum of $125,000—not $100,000—that Aetna cut a check to Ms. Horne and deposited that sum in the Aetna Checkbook beneficiary account. It is that same sum—$125,000 that Aetna later deposited with the Clerk of the Court for disbursement in this case asserting that this $125,000 amount represents the "Optional Life Insurance Death Benefit proceeds payable under Aetna Group Policy No. 608602 insuring the life of Michael Montgomery, deceased." [*See* Stipulated Order Allowing Aetna Life Insurance Company to Pay Money into Court and Obtain a Discharge of Liability.]

Under these circumstances, the Court finds insufficient evidence of record to rebut the presumption that Aetna timely received Mr. Montgomery's "plan change" form. Therefore, the Court finds Aetna to have received the beneficiary change request form prior to having "paid" the $125,000 death benefit to Michelle Horne. Accordingly, applying the Benefit Payment provisions governing Mr. Montgomery's ERISA Optional Group Life Insurance policy, the Court finds that the beneficiary change request signed by Mr. Montgomery on March 6, 1997 became effective on that date and, as the designated beneficiary, Cynthia Montgomery is entitled to the $125,000 which has been deposited with the Court by Aetna.

### CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant–Claimant Cynthia Montgomery's Motion for Summary Judgment is GRANTED and the Cross–Motion filed by Michelle Montgomery, a/k/a Michelle Horne is DENIED. Accordingly,

IT IS FURTHER ORDERED that the $125,000 Optional Life Insurance Death Benefit proceeds deposited with the Clerk of the Court by Plaintiff Aetna shall be distributed to Defendant–Claimant Cynthia Montgomery.

---

8. During discovery, Ms. Horne submitted a Request for Production to Aetna in which she requested:

> Please provide the form (all pages if two sided or multiple pages) that an employee of Chrysler Corporation in February and March 1997 would have utilized to... alter the amount of Employee or Dependent Life Insurance requested with respect to his Op-

tional Employee and Dependent Group Life Insurance.

Aetna responded to this request by stating that the only form that would have been used was the form which is at issue here:

> Aetna does not have this form. Document No. A0042 previously produced appears to be the front side of the form that would have been available to employees during 1997.