The motion to quash service will be allowed, with exceptions.

**HITZ et v OHIO FUEL GAS CO et**

Ohio Appeals, 5th Dist, Stark Co

OVERMYER, J.

Decided Oct 20, 1932

It is the view of this court, after examining the briefs and authorities, that an "appeal" under §1465-90 GC, is not "commenced" by the filing of a petition alone, for that very statute requires summons to issue. If no summons is issued there is no appeal, no one brought before the court, no action pending against any one, no suit begun.

In the **120 Oh St** cited by both counsel, the court say on page 448,

"The order of the Industrial Commission of December 21, 1926, was a final order, and the statute of limitations, **within which an appeal is authorized to be prosecuted** to the Court of Common Pleas, **began to run from the date** the defendants in error received notice of such final order," etc.

What began to run on that date? The sixty day period, of course. What is the "limitation within which an appeal is authorized to be prosecuted?" The sixty day period. Now, is any action "prosecuted" by the mere filing of a petition? No, not when the statute prescribes that summons shall issue. The filing of a petition brings no one before the court, confers no rights and creates no obligations, stops no statute of limitations from running in any other proceeding known to the court, and this court feels certain that under this statute the mere filing of a petition within sixty days without summons being issued within that time, confers no jurisdiction. At any rate, the question is so important it should be settled before proceeding further with the case.

This court agrees fully with the trend of decisions liberally construing the provisions

Lynch, Day, Pontius & Lynch, Canton, John Ketterer, Canton, Eagleson & Laylin, Columbus, and K. S. Hampton, Columbus, for defendants.

Black, McCuskey, Ruff & Souers, Canton, and Willis Bacon, Akron, for plaintiffs.

SHERICK, P.J.

Such facts as were adduced at trial as are pertinent to the question at issue will hereinafter be referred to.

The plaintiffs devote much time and energy in establishing the fact that the instrument is what is known as an "unless" lease, that it is not an "or" lease, and therefore the nonpayment of rental works a forfeiture of this lease at the lessor's election. We do not believe that this question aids in the solution of the problem.

The sole question as we see it is: Was payment made in time? Or, otherwise stated, was payment made in this instance in time by deposit in the mails of the bank check in an envelope properly addressed and stamped? If this question is answerable in the affirmative, it is not material or necessary to determine whether nonpayment of rentals would work a forfeiture of this lease.

The proof made on the issue presented is voluminous. There is shown over many pages of the record that the West Virginia company had many leaseholds, that its officer charged with the duty of paying lease rentals represented similar companies in like capacity, and in order that his duties might be performed expeditiously and accurately it was imperative that his bookkeeping, adding machine totals, the drawing of checks in correct amounts and at the required time, the dating, addressing, and enclosing of these checks in window envelopes in advance of the time of mailing, and in placing the enclosed checks in files and mailing them on the tenth day prior to date of rental-due day, be systematized to such a point that one operation would be a check and recheck as against other operations, to the end that errors should not occur.

Such a course is proved to have been employed in the lessee's office, aided by the use of addressograph, adding, stamping, and sealing machines, and that a final check-up had been made in checking the canceled checks as against the bank account and record.

In the preparation of the company's April, 1931, rental payments, this elaborate and systematized office practice was followed. No error occurred in this monthly business, then, or at any other time, except it be that on final bank check-up it was discovered that the Hitz check for $3.88 had not been presented for payment. Upon discovery of this fact the West Virginia Company, by letters of inquiry addressed to Hitz, sought to learn if its check had been received and why it had not been presented for payment. To these letters the plaintiffs made no reply until October 20, 1931. This reply makes the first claim of forfeiture. We do, however, further learn from the record that, prior to April, 1931, the territory surrounding the plaintiff's land had become a proven gas field, and that the lease was a valuable one, which plaintiffs then claimed was voided for other reasons not now assigned.

It is the claim of the plaintiffs that the defendant's proof of the preparation of this check, its addressing, stamping, and mailing thereafter, is no evidence, and that it is but basing inference upon inference and presumption upon presumption, as no one has positive recollection of this particular check's execution and mailing, and that under the rule of **Sobolovitz v Lubric Oil Co., 107 Oh St, 204, 140 NE, 634**, this is not permissible in the face of the plaintiff's positive declaration that the check was never delivered to them.

We must first determine if the nondelivery of this check plays an important part in the situation developed, and to that end we revert to the language of the payment clause of the lease. It says "payments may be made direct to the lessor." But this is not the only manner of payment provided. The lessee is accorded the privilege of payment "by bank check to the order of W. J. Hitz mailed to his post office address" designated.

From the evidence it appears that the latter course was pursued from the time of the beginning of payment of rentals, without objection by the lessors. It is not provided that the lessee should see to it that checks were to be delivered to the lessors by the mails within the specified time, but only that the bank check be mailed to Hitz, properly addressed. We are now asked to declare in fact that the mails be adjudged

to be the agent of the lessee company. We think it is plain that the reverse is true. The lessee is not required by the covenant to mail and deliver, but only to mail. The instrument makes the postal service the lessors' agent to deliver the check which the lessee must see "mailed." It is common knowledge that a letter is mailed when it is posted, that is, placed in the mails, and it is a well-recognized rule of law that payment may be made to the creditor's authorized agent. It follows that if the check was properly prepared, addressed, stamped, and mailed, the lessee was not bound to see to its delivery. Thereafter the lessee had but the remaining duty to promptly pay a second time when notified and convinced of the nonreceipt and loss of its issued check.

Had the payment clause required that the check be not only mailed, but also delivered to the lessor's a different answer might finally be arrived at. The inference or presumption of mailing, arising from usual office practice proved and followed in this instance, would no doubt be dispelled by positive proof that the check was not delivered, because such a presumption is rebuttable. But that is not this case.

We therefore come now to consider if Sobolovitz v Lubric Oil Company is decisive of the issue made. It is our conclusion that it is not, and we now propose to expound our reason for the conviction which we entertain.

It must be remembered that when it is sought to prove the preparation and mailing of a document, four things must be shown. They are the instrument's execution, its inclosure in a proper container correctly addressed and stamped, that it was placed in the mails, and, where time is of the essence, that it was mailed in time. In the case of a single letter prepared and mailed by one person, proof thereof is easily made. But in this day and age of business, and its tremendous use of the mails, making necessary mechanical aid and systematized custom in large offices, it is impossible to conceive that a personal recollection may be retained of one of many similar and like transactions. The law's understanding of this new business development, and its desire to expand to meet the exigencies of this new situation, recognize that proof of the operation of a perfected business system, when it has been strictly followed at the time of the specific questioned act, is proof of the doing of those things which naturally and reasonably are inferable therefrom.

Hence, in this case, proof of the system and the doing of the various acts and things incident to the complete process which makes up that system, are now considered as proof of such ultimate fact or facts that one must prove. From the proven facts in this case it may be inferred that the check was prepared, addressed, inclosed, stamped, and filed for mailing at a definite time. And to reach and entertain a reasonable presumption that these ultimate facts are proven by inference from proven facts it is not necessary that inference be based upon inference. The law now properly recognizes such proof of a custom, and that the system was followed at the time of the questioned act, and proof of the things done in the working out of the system is proof of the ultimate facts to be proved that may take the place of actual knowledge and recollection of the scrivener of a single document, who inclosed, stamped, and directed the envelope and made it ready for mailing.

A majority of other jurisdictions have properly stopped at this point and have refused to go further and infer from proof of the system and the things done therein that the system was followed, that the inclosed document was actually mailed.

In Collins v Hoover, 205 Mo. App., 93, 218 SW, 940, it is stated: "We do not find any authority in this state to support the comeptency of the admission of a copy of a letter by proving that the original was written, put in an envelope, properly addressed and stamped, and that it was the general custom to mail all letters. The word 'custom' implies only that such letters are generally and usually mailed. It also implies that some may not be mailed; and hence the rule as it appears to be in our state that there must be some evidence more than mere custom that the letter was mailed, other requisites being proven, in order to make competent a copy."

Examination of the record before us discloses that ten days before the date on which the payments were due the lessee's land agent, in whom reposed exclusive possession of the filed checks ready for mailing, and who was charged with the duty personally, went to the files and took up the envelopes that were filed for mailing as of that date and deposited them in the mail chute of the office building. There is, therefore, positive evidence in this case that the checks prepared and filed for mailing as of that date were actually placed in the mail chute on that date. From these proven facts it may logically be inferred that the lessors' check was included in the number

deposited in the mail chute, and to arrive at this inference it is not necessary to pile inference upon inference. There is, therefore, proof in this case of the ultimate four facts previously enumerated.

In lieu of authorities supporting the rule which we consider sound, we quote from the note appearing in 25 A.L.R., 13. The authorities are there listed: "In many if not the majority of cases, it is held that proof of a usage in the sender's office whereby letters deposited in a particular place are taken by an employee and mailed by him is not sufficient, standing alone, to establish the fact that a letter so deposited was mailed. In order that such evidence may be considered sufficient it must be accompanied with proof showing a compliance with the custom, as, for instance, the evidence of the employee whose duty it was to take letters so deposited, and mail them, that he actually did so."

But one more question remains: Is deposit in a mail chute where the same is under the control of the Postal Department a proper mailing? This we affirmatively answer. See Tobin v Taintor, 229 Mass., 174, 118 NE, 247, Hudson v Grand Rapids & I. Ry. Co., 203 Ill. App., 377; Hummelshime v State, 125 Md., 563, 93 A., 990, Ann Cas., 1917E, 1072; and note in 25 A.L.R., 12.

In the case before us the proof offered recites that the check was mailed in a "mail chute." The proof goes no farther. It was therefore a statement of a conclusion. However, the proof as made must be considered as sufficient in view of the fact that no objection was made thereto or proof offered otherwise.

The burden of proof was upon the plaintiffs to show that the lessee and its assignee had breached the contract. This burden they have failed to maintain. Their denial of delivery to them by the postal service of the check might have been sufficient to dispel the proven facts and the final presumption of mailing based thereon, if delivery had been a part of the covenant of payment; but it cannot destroy that presumption entirely when proof of mailing was alone required, for the agent of the plaintiffs, the postal service, might have been responsible for failure of delivery.

A decree for the defendant companies may be entered and the petition dismissed at plaintiff's cost.

Decree accordingly.

LEMERT and MONTGOMERY, JJ, concur.