## Avemco
## v.
## Eaves
*[Cite as 3 AOA 89]*

Case No. CA 481
Adams County, (4th)
Decided May 7, 1990

Janik & Associates, Mr. Steven G. Janik and Mr. David L. Lester, Cleveland, Ohio, and Rendigs, Fry, Kieley & Dennis, Mr. Donald C. Adams, Jr., Cincinnati, Ohio, for Appellant.

Mr. John B. Caldwell, West Union, Ohio, for Appellee, The First State Bank, Mr. David D. Wilson, West Union, Ohio, for Appellee, Douglas Eaves.

HARSHA, J.

This matter is before us on appeal from the judgment of the Adams County Court of Common Pleas, denying plaintiff-appellant's action for declaratory relief.

Plaintiff-appellant, Avemco, sought declaratory judgment for non-coverage with respect to an aircraft accident which occurred May 18, 1984. When the accident occurred, Eaves, defendant-appellee, was piloting the single-engine Cessna. As a result of the accident, Eaves and his passenger, Robert Wilson, sustained injuries and the aircraft was damaged. Eaves filed a property damage claim with Avemco. Avemco denied coverage citing a specific exclusion[1] contained in the insurance policy that applied to student pilots when transporting passengers.

The trial court held that appellee did not receive the terms and conditions of the policy and that he was not bound by the student pilot exclusion. We affirm in part and reverse in part.

In appellant's first assignment of error, it contends that:
"THE TRIAL COURT ERRED IN REACHING THE CLEARLY ERRONEOUS CONCLUSION THAT AVEMCO DID NOT SEND OUT THE COMPLETE INSURANCE POLICY."

It is uncontested that on September 27, 1983, Eaves contacted appellant by telephone and requested aviation insurance. The dispute is whether the insured, Eaves, received the "buff colored" portion of the insurance policy which contained its actual terms and conditions. Avemco offered the testimony of Charles Hubbard, executive vice-president of Avemco, to establish the office custom or practice of assembling and issuing insurance policies. Avemco established that Hubbard had been employed by Avemco and associated with aviation insurance for nineteen years. He has been responsible for policy issuance since 1972. In fact, Hubbard developed and implemented the issuance procedures which were in effect in 1983.

In summary, Hubbard testified that when an individual telephones Avemco requesting insurance, he is provided a price quotation for insurance. If acceptable, the insurance is bound as of the date requested by the insured. In this instance, Eaves was bound on September 12, 1983. At that time, a form called a binder is sent to the insured, who signs it and returns it to Avemco with the premium check. The record indicates that Eaves received the binder, signed it and returned it with the necessary check.

When the binder is mailed to the customer, a copy is sent to the home office to begin processing. From the time the processing begins, it is office practice to check the policy three different times for completeness to insure that the packet consists of an insured identification card, the policy, a data sheet, a hangared aircraft endorsement, requested for policy change or cancellation and an equipment registration form. The first time it is checked is in the policy typing department where the policy jacket is selected. From the typing department, the policy goes to the underwriting department. There a person who is thoroughly trained in aviation insurance again checks the policy and countersigns it. Last, the policy goes to the mail room where the sole function is to make sure that all the forms are assembled. The mail room then folds the material, inserts it in an envelope and postmarks it.

Hubbard next testified to the use of a tracking sheet. The sheet indicates by either date stamp or signature stamp which departments the policy has been in and when it was there. In this instance, the tracking sheet indicates that the policy was in the binder department, keypunch department, typing department, binder department again and then to the countersigning department. There is no notation that the policy had in fact made it to the mailroom.

In his case in chief, Eaves presented the testimony of his wife who states that she receives and opens all the family mail. She testified that in October 1983 she received an envelope from Avemco containing an insurance card, a "data page" and a "hangared aircraft endorsement." She states that she never received the "buff colored" insurance policy nor the "request for policy change or cancellation" or "equipment registration form," which Hubbard testified should have been in that envelope based upon developed office practice.

Avemco argues that given the detailed issuing, checking and mailing procedures used and documented by Avemco, it is against the manifest weight of the evidence to find that a complete policy was not mailed and received by Eaves, especially since this evidence is rebutted by the testimony of Mrs. Eaves. Avemco attacked her credibility pointing out that Mrs. Eaves testified that she never saw the original binder although it had been sent to Eaves in the mail, received by him and returned. Mrs. Eaves also testified to discarding the policy card which Avemco contends is an important part of the policy. Basically, Avemco argues that considering Mrs. Eaves' testimony as a whole, it is apparent her memory is deficient as to all the correspondence that Eaves received and that since she discarded the policy card, it is possible she also discarded the three page document.

The issue before us is whether the evidence supports the court's judgment that Eaves never received the "buff colored" policy. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279.

Jurisdictions are split as to whether testimony of business custom of preparation and mailing procedures create an inference or a presumption that a document was mailed. Obviously, where the state of the law is that testimony of business custom creates a presumption that a document was mailed, the degree of proof required to rebutt the presumption, as opposed to an inference, is markedly different. If only an inference is created, the trier of fact may or may not find that a document has been mailed. The acceptance or rejection of an inference is discretionary. However, if a presumption is created, once a business

practice or custom is shown, the trier must find that the document was mailed *unless* evidence has been submitted which counterbalances the evidence to sustain the presumption. *State v. Myers* (1971), 26 Ohio St. 2d 190, 201.

In the syllabus of *Hitz v. Ohio Fuel Gas Co.* (1932), 43 Ohio App. 484, the court states "[p]roof of perfected business system strictly followed is proof of doing of those things which naturally are inferable therefrom." However, in discussing the concept further, the court is ambiguous as to whether the custom created a permissive inference or a rebuttable presumption. It states "[t]he inference or presumption of mailing, arising from usual office practice proved and followed in this instance, would no doubt be dispelled by positive proof that the check was not delivered, because such a presumption is rebuttable." *Id.* at 489. The court did, however, set forth strict guidelines on the threshold proof which must be offered by a party seeking to create an inference or a presumption. The party must show: "(1) the document in question was executed; (2) it was placed in a properly addressed and stamped envelope; (3) it was placed in the mail; and (4) where time is of the essence, that it was mailed in a timely manner." The court also found the operation of a perfected business system will be accepted as evidence when the business practice "has been strictly followed at the time of the specific questioned act ***." *Id.* at 490.

In the case at bar, Avemco put on testimony of a perfected business procedure which was being implemented at the time the policy in question was issued. However, Avemco did not offer the threshold proof for an inference or presumption as dictated in *Hitz v. Ohio Fuel Gas Co.* and accepted by this court. Avemco failed to demonstrate that its business system had been strictly followed. The tracking document previously referred to demonstrated that the policy in issue had been processed through the various stages; yet there is no documentation that the policy made it to the mail room or that it had been mailed.

We affirm the trial court's decision below based upon the fact that Avemco did not produce the threshold evidence that a strict business practice had been followed in this particular case and that the testimony of Mrs. Eaves constitutes competent and credible evidence to support the court's finding that the document was never received. Accordingly, we need not address the question of whether evidence of business custom creates a permissible inference or a rebuttable

presumption, as appellant's failure to satisfy the requirements of *Hitz* is dispositive. Appellant's first assignment of error is overruled.

In its assignment or error, appellant contends:

"THE TRIAL COURT ERRED IN HOLDING THAT THE STUDENT PILOT EXCLUSION CONTAINED IN THE SUBJECT POLICY DID NOT APPLY, AS TO PRECLUDE COVERAGE."

Essentially, appellant argues that neither actual nor constructive delivery of an insurance policy is required in order for the insurer to rely upon policy exclusions. We note that based upon our holding on the first assignment of error, appellant failed to prove constructive delivery of the insurance policy. Therefore, those portions of appellant's brief addressing the ramifications of constructive delivery need not be further addressed.

Appellant advances the proposition that a policy's effectiveness does not depend upon delivery, whether actual or constructive, to the insured; rather, the policy becomes effective upon the acceptance of the insured's application by the insurer. *Hartford Fire Ins. Co. v. Whitman* (1906), 75 Ohio St. 312 (the unconditional acceptance of the application by the insurer is consummation of the insurance contract).

In *Newark Machine Co. v. Kenton Insurance Co.* (1893), 50 Ohio St. 549, the Ohio Supreme Court discussed the effects of an undelivered insurance policy. The court acquiesced in the proposition that "whether the contract is closed by parol or by a preliminary binding receipt, the legal presumption is that the usual policy is to follow." *Id.* at 556. The Supreme Court also adopted the position held by the Supreme Court of Minnesota in *Salisbury* v. *Insurance Co.*, 32 Minn. 460 that "upon an oral contract of insurance, where *nothing is said about conditions, if a policy is to be issued, the parties are presumed to intend that it shall contain the conditions usually inserted in policies of insurance in like cases.*" Finally, the court looked to *Eames* v. *Insurance Company* (1877), 94 U.S. 629 wherein the Supreme Court found:

"It is sufficient if one party proposes to be insured, and the other party agrees to insure, and the subject, the period, the amount, and the rate of insurance is ascertained or understood, and the premium paid if demanded. It will be presumed that they contemplate such form of policy, containing such conditions and limitations as are usual in such cases, or have been used before

between the parties. This is the sense and reason of the thing, and any contrary requirement should be expressly notified to the party to be affected by it."

This case is virtually identical to the *Eames* case. Eaves requested insurance from Avemco. The subject, the period, the amount and the rate of insurance were agreed upon. Eaves signed a binder and submitted the premium to Avemco. Avemco countersigned the policy, thereby memorializing its intention to provide insurance coverage to Eaves. Hubbard testified that a standard noncommercial aviation insurance policy was prepared for Eaves containing the contested exclusion. Hubbard also testified that the exclusion denying coverage for accidents occurring while a student pilot is transporting passengers is a standard exclusion in the aviation insurance industry. He testified that all the companies issuing such policies include this exclusion. Further, the Federal Aviation Association specifically forbids student pilots from flying with passengers.

The unrefuted evidence is that the parties intended to enter into a contract in which Avemco would provide aviation insurance to Eaves for a specified period, amount, subject and rate of insurance. Eaves paid his premium. Both parties intended for the coverage to commence on September 27, 1983 when Avemco orally agreed to be bound. Avemco cannot prove that Eaves actually or constructively received the subject policy. We find that *Newark Machine Co. v. Kenton Insurance Company, supra,* is binding upon this case. Absent a showing of actual or constructive delivery and where the parties intend to be bound, a contract for insurance may be proven by parol evidence. Since there is no express statement to the contrary, it will be presumed that the parties intended the policy to contain the usual conditions inserted in policies of insurance in like cases. The contested exclusion is a common condition in noncommercial aviation insurance policies. In fact, based on Hubbard's uncontested testimony, no company in the industry would issue a policy without exclusion.

We hold that the aviation policy including the exclusion at issue was in effect at the time of the accident. Accordingly, in that appellant is entitled to judgment as a matter of law, we sustain the second assignment of error and, pursuant to App. R. 12(B), hereby enter judgment for appellant, declaring no coverage exists with respect to the aircraft accident of May 18, 1984.

*Judgment reversed.*

GREY, J., concurs in judgment and opinion.
STEPHENSON, J., concurs in judgment only with concurring opinion.

---

[1] The insurance policy includes in pertinent part:
"EXCLUSIONS APPLYING TO ALL COVERAGES
"***

"This policy does not cover *bodily injury, property damage* or *loss*:

"1) When *your insured aircraft* is:
" ***

"(f) operated by a student pilot carrying passengers;
"*** (emphasis is in original)

STEPHENSON, J., concurring.

I concur with the judgment of the majority in holding that the exclusionary clause at issue herein was included in the insurance policy by Avemco to appellee, Douglas Eaves. However, I do not believe it was necessary for the majority to address the "delivery issue" in order to reach that conclusion.

In its brief, appellant makes several distinct arguments in support of its first assignment of error that "the trial court erred in reaching the conclusion that Avemco did not send out the complete insurance policy." One of these arguments is that the validity of the policy does not depend upon its delivery or non-delivery to an insured. I agree.

It is well established law in Ohio that a valid contract of insurance can be made by patrol agreement. *Newark Machine Co. v. Kenton Ins. Co.* (1893), 50 Ohio St. 549 at paragraph one of the syllabus. Obviously, in the case of a parol insurance contract, there will not be any delivery of *written* terms and conditions because none exist. Nevertheless, the law will presume that the parties intended those terms and conditions which are usual and customary. *Id.* at paragraph two of the syllabus. Such terms and conditions are, therefore, given binding legal effect independent of whether any writing is subsequently delivered to the insured.

In short, it would appear that the delivery, or non-delivery, of an insurance policy is at issue only when the consummation of the contract, or the validity of the policy, is called into question. *See e.g. Hartford Fire Ins. Co. v. Whitman* (1906), 75 Ohio St. 312, 319. In the cause *sub judice,* all

parties have taken the position that a binding and valid contract of insurance has been formed. At issue, rather, are the terms and conditions of the contract, more specifically, whether there is an exclusion for damage incurred during operation by a student pilot carrying passengers. Because the validity or existence of an insurance contract is not at issue herein, I believe the question of whether appellant made a proper "delivery" to be irrelevant.

If such issue is irrelevant in resolving the cause of action, then any error by the trial court in deciding the issue would not prejudice appellant. In that an assignment of error cannot be sustained without a showing prejudicial error, *Gries Sports Enterprises, Inc. v. Cleveland Browns Football Co.* (1986), 26 Ohio St. 3d 15, 28, I would also hold that appellant's first assignment of error should be overruled.

I further concur in the majority's judgment and opinion sustaining the second assignment of error. I would add that in Ohio, insurance contracts may rest partly in parol and partly in writing, *Central Cas. Co. v. Fleming* (1926), 22 Ohio App. 129, 136 thereby including those contracts based upon an oral agreement and an afterwards signed application. Further, exclusions similar to the one at issue herein are usual and customary throughout the country. See cases cited in 12 Couch, Insurance (2d ed. 1981) 143 to 145 & fn. 2, section 44A:105.