**SAYLOR et al., Appellants,**

v.

**PROVIDENCE HOSPITAL, Appellee, et al.**

[Cite as *Saylor v. Providence Hosp.* (1996), 113 Ohio App.3d 1.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950413.

Decided July 24, 1996.

*Roeller, Roeller & Jameson* and *Robert K. Roeller,* for appellants.

*Deborah R. Lydon* and *Clyde Bennett II,* for appellee.

MARIANNA BROWN BETTMAN, Presiding Judge.

On August 26, 1994, Perry Saylor, Jr., and his wife Deirdre Saylor, plaintiffs-appellants, filed a complaint in the Hamilton County Court of Common Pleas alleging several causes of action against the AcroMed Corporation ("AcroMed"), Providence Hospital ("Providence" or "the hospital"), and Frederick Winston, M.D. In the complaint, the Saylors alleged that on June 4, 1991, a Steffe plate and screws manufactured by AcroMed were surgically implanted in Perry Saylor's back by the hospital and by Winston. An x-ray of Saylor's back on March 22, 1993, revealed that one screw had broken in his vertebrae. The Saylors alleged that all three defendants were liable for the injuries suffered by Mr. Saylor and the loss of consortium suffered by Mrs. Saylor.[1]

The difficulty which arose at the trial court level in this case was in determining exactly what claims the plaintiffs were alleging, and of those claims, which were legally cognizable against the hospital. The court below interpreted the complaint as advancing the following claims: (1) a medical malpractice claim based upon the failure of the defendants to obtain "informed consent" from Mr. Saylor, (2) a claim for punitive damages, (3) a claim for fraud, (4) a claim for breach of warranty, (5) a claim for products liability, and (6) a loss-of-consortium claim. On February 17, 1995, nearly six months after the filing of the second amended complaint, Providence filed a Civ.R. 12(B)(6) motion to dismiss all the claims alleged against it except Mrs. Saylor's consortium claim arising out of the medical malpractice claim. As to that claim only, Providence filed a motion for summary judgment on statute-of-limitations grounds. The trial court granted both motions on May 3, 1995, and the plaintiffs filed this appeal.

The Saylors raise three assignments of error, but the first and third assignments are the same. Both allege that the trial court erred in granting Providence's motion to dismiss the fraud, breach of warranty, products liability, and punitive damages claims and Mr. Saylor's medical malpractice claim. In their second assignment of error, the Saylors argue that the trial court erred in granting summary judgment in favor of Providence on Mrs. Saylor's loss-of-consortium claim derived from the medical malpractice claim. Because of their interrelatedness, we will address all three assignments of error together.

█ To justify a dismissal on any Civ.R. 12(B)(6) motion, the court must find beyond doubt from the complaint that the plaintiffs can prove no set of facts entitling them to relief. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753. All inferences must be

---

1. Winston and AcroMed were voluntarily dismissed as parties below. Providence Hospital is the only party defendant in this appeal.

resolved in the plaintiffs' favor. *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 649 N.E.2d 182; *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 532 N.E.2d 753. While Civ.R. 8(A) provides that a pleading which sets forth a claim for relief need not state all elements of the claim, enough must be pleaded so that the person or entity sued has adequate notice of the nature of the action. See *Fancher v. Fancher* (1982), 8 Ohio App.3d 79, 8 OBR 111, 455 N.E.2d 1344.

The Ohio Supreme Court has twice recently reaffirmed the stringent standard against Civ.R. 12(B)(6) dismissals, stating that "[a] Civ.R. 12(B)(6) dismissal based on the merits is unusual and should be granted with caution." *State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs.* (1995), 72 Ohio St.3d 464, 467, 650 N.E.2d 1343, 1345–1346; *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.* (1995), 72 Ohio St.3d 106, 109, 647 N.E.2d 799, 802.

■ We will first dispose of the fraud claim. Averments of fraud must be pleaded with particularity. Civ.R. 9(B). The complaint does not allege that Providence made any misrepresentations to Mr. Saylor, nor does it include the contents of any false representations. In their appellate brief, the Saylors concede that the facts alleged in the complaint do not amount to fraud. We agree. The Saylors have simply failed to allege any cognizable fraud claim against the hospital, and the motion to dismiss the fraud claim against the hospital was not error.

■ Turning next to the claim of lack of informed consent, Providence argues, and the trial court apparently agreed, that this claim was properly dismissed because it sounded in medical malpractice and therefore could not be asserted against a hospital. We agree with the hospital that medical malpractice claim based on lack of informed consent is not cognizable against the hospital under the facts as pleaded in the complaint. *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 17 OBR 281, 477 N.E.2d 1145; R.C. 2317.54. This also disposes of the Saylors' second assignment of error because the record clearly demonstrates, as to a medical claim against the hospital, that Mrs. Saylor did not timely extend the statute of limitations on her consortium claim. R.C. 2305.11(B)(1). Summary judgment was properly granted as to her medical malpractice loss-of-consortium claim, and the second assignment of error is overruled.[2] See Civ.R. 56(C).

The Saylors argue, however, that they have alleged a products liability claim, either in addition to or instead of a medical claim. We agree.

---

2. This judgment does not prevent Mrs. Saylor from litigating a loss-of-consortium claim based upon a products liability theory, as she would not need to extend the statute of limitations on a products liability claim.

In their complaint, the Saylors do not allege that the hospital manufactured the product; they clearly allege that AcroMed was the manufacturer. Thus, the only basis for a products liability claim against Providence would be one of the independent grounds for supplier liability under R.C. 2307.78(A).[3]

■ The hospital argued below and continues to maintain in this court that it was not in the business of supplying or selling Steffe plates and screws, that the trial court did not have to determine what constituted a sale, and that as an intermediary supplier, it was not subject to damages based on a products liability claim.[4] This is not correct. R.C. 2307.71(O)[5] codifies *Anderson v. Olmsted Util. Equip., Inc.* (1991), 60 Ohio St.3d 124, 573 N.E.2d 626, a prestatute decision in which the Supreme Court of Ohio declined to limit supplier liability to an actual sale in the traditional sense, holding that the only relevant question was whether the "seller" facilitated placing the product into the stream of commerce. See *Welch Sand & Gravel v. O & K Trojan* (1995), 107 Ohio App.3d 218, 668 N.E.2d 529. Ohio's codification of products liability law is a continuum which follows the product. The consumer, in this case the patient, is at the least culpable end of the chain. See O'Reilly & Cody, Ohio Products Liability Manual (1992), Chapter 13.

■ The hospital's argument also fails to consider independent supplier liability under Ohio products liability law. A supplier may be held independently liable for misrepresentations or negligence.[6] This includes failure to warn or inade-

---

3. The Saylors do not argue that any of the provisions for substituted supplier liability under R.C. 2307.78(B) apply to Providence in this case.

4. Interestingly, the hospital did not argue that pursuant to R.C. 2307.71(O)(2) it is statutorily excluded from the definition of a supplier, nor do we so hold as a matter of law. The characterization of hospital liability for equipment-related patient injuries is a complex and evolving question. See Smith, Hospital Liability (1996 Supp.), Chapter 8 (Equipment Related Patient Injuries); Alder, Device Dilemma: Should Hospitals Be Strictly Liable for Retailing Defective Surgical Devices? (1994), 5 Alb.L.J. Sci. & Tech. 95.

5. "Supplier" is defined in R.C. 2307.71(O) as:

"(a) a person that, in the course of business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or *otherwise participates in the placing of a product in the stream of commerce;*

"(b) a person that, in the course of a business conducted for the purpose, installs, repairs, or maintains any aspect of a product that allegedly causes harm." (Emphasis added.)

6. R.C. 2307.78(A) provides:

"(A) * * * [A] supplier is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, that either of the following applies:

"(1) The supplier in question was negligent and that negligence was a proximate cause of harm for which the claimant seeks to recover compensatory damages;

quate warnings.[7]  Cf. *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 556 N.E.2d 1177.

We hold that the plaintiffs have failed to state a products liability claim for misrepresentation or for any other theory of strict liability.[8]  The complaint does not state any representations.  However, we agree with the Saylors that paragraph 13 of their complaint[9] does allege a products liability inadequate-warning claim against the hospital.  "Civ.R. 8(A) requires only that a pleading contain a short and plain statement of the circumstances entitling the party to relief.  A party is not required to plead the legal theory of recovery or the consequences which naturally flow by operation of law from the legal relationship of the parties."  *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512, 639 N.E.2d 771, paragraph six of the syllabus.  See, also, McCormac, Ohio Civil Rules Practice (2 Ed.1992) 102, Section 5.01 ("The rules make clear that a pleader is not bound by any particular theory of a claim but that the facts of the claim as developed by the proof establish the right to relief"), cited in *Illinois Controls, supra,* at 526, 639 N.E.2d at 782.

Given our holding that the Saylors did plead enough to state an inadequate-warning products liability claim, we find it clear from the record on appeal that the trial court also erred in entertaining a Civ.R. 12(B)(6) motion at all on this claim.  The issues which need to be determined in this case are (1) whether the hospital is a supplier under the facts of this case, and (2) whether one of the grounds for independent supplier liability exists.  In other words, did the hospital possess information or should it have possessed information from the FDA on

---

"(2) The product in question did not conform, when it left the control of the supplier in question, to a representation made by that supplier, and that representation and the failure to conform to it were a proximate cause of harm for which the claimant seeks to recover compensatory damages.  A supplier is subject to liability for such a representation and the failure to conform to it even though the supplier did not act fraudulently, recklessly, or negligently in making the representation."

7.  Comment G to Section 388 of the Restatement of the Law 2d, Torts, elaborates on the supplier's duty with regard to warnings:

"[T]o exercise reasonable care to give to those who are to use the chattel the information which the supplier possesses, and which he should realize to be necessary to make its use safe for them and those in whose vicinity it is to be used."

8.  The Saylors' breach-of-warranty claim is controlled by the Ohio products liability statutes.  R.C. 2307.71(M)(3).

9.  In this paragraph the Saylors allege that "all Defendants knew or in the exercise of reasonable care knew of the continued design changes of the steffe plate and screws prior to June, 1991 and failed to warn Plaintiff of the damages inherent in their implanted use or advise Plaintiff that the Federal Drug Administration had not approved the same for marketing."

this product that it failed to pass along? These are exactly the issues the Saylors were in the process of trying to determine through discovery at the time the court entertained the Civ.R. 12(B)(6) motion.

When the hospital filed its motion to dismiss and motion for partial summary judgment on February 17, 1995, the plaintiffs had answered interrogatories served by the hospital and were specific in answering questions about their theory of inadequate warnings. In turn, the plaintiffs had posed interrogatories to the hospital, many of which were directly related to developing their inadequate-warning products liability claim.[10] The record does not demonstrate when these interrogatories were served on the hospital. The hospital originally objected to most of the questions, but then supplemented its responses on April 11 and April 27, 1995. All of this discovery material was filed with the court on May 3, 1995, and it is all pertinent to the inadequate-warning claim.

Because of our holding in regard to the inadequate-warning products liability claim, we also hold that a Civ.R. 12(B)(6) ruling on the punitive-damage claim [11] was premature, and should also not have been made at that juncture.

---

10. The following interrogatories are particularly relevant:

"(17) Identify each rule, regulation, guideline, instruction, recommendation, manual, handbook, collection of orders or notice, government statutes, tools or regulations, whether state, federal or local and whether legislative or administrative, or other documents regarding the implantation of bone screws and bone plates onto the vertebrae of patients at Providence in June of 1991.

"(18) State the name and address of all Providence Hospital persons who have or had contact with AcroMed for any reason; naming the person who purchased items from AcroMed and specifically the items implanted in Plaintiff, Perry Saylor, and those persons in the chain of custody of such implant while at your hospital.

"(19) State the name and address of all persons at your hospital who received FDA warning letters and those persons who monitor all operative procedures to assure that same are legal, safe and in accordance with Hospital Credidation [sic] requirements since 1982.

"(20) State how the AcroMed implant in Plaintiff, Perry Saylor's, body was ordered; by whom; for what stated purpose and whether all items were received intact in one Kit as one implant device; on what date.

"(21) On what date did Providence Hospital begin ordering AcroMed products from Defendant, AcroMed, and does Providence Hospital continue to order from AcroMed as of February 1, 1995?

"(23) Did you obtain FDA approval for clinical testing of pedicle fixation systems? If so, attach a copy thereof.

"(24) Did you obtain a written Investigational Device Exemption from the FDA and written permission and consent of Perry Saylor to involve him in an Experimental study? If so, attach copies.

"(25) Did your Institutional Review Board approve the implant in Perry Saylor's spine? If so, attach copies.

"(26) Did you purchase a stainless steel or a Titanium Alloy implant for Perry Saylor? If so, please attach a copy of purchase order and billing invoice from the company."

11. R.C. 2307.80 governs punitive damages in products liability claims.

Therefore, we remand the cause to the trial court with instructions to allow both Mr. and Mrs. Saylor to proceed on their products liability failure-to-warn claim against the hospital.

In summary, the first and third assignments of error are sustained with regard to the failure-to-warn claim and the punitive-damage claim, and Mrs. Saylor's derivative products liability loss-of-consortium claim. As to the other claims, the assignments of error are overruled. The second assignment of error is overruled in its entirety.

The judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

GORMAN and DOAN, JJ., concur.