This timely appeal arises from the decision of the Mahoning County Common Pleas Court granting summary judgment in favor of The Cincinnati Insurance Company. For the reasons set forth below, the decision of the trial court is hereby affirmed.
 I. FACTS
Del B. Jones, Jay E. Jones and Daniel E. Susany are partners in a surveying and civil engineering firm which operates under the business name Technical Land Consultants (appellant) Between July 26, 1989 and November 25, 1989, appellant was hired by Joseph Zdrilich to survey a parcel of property, prepare a site plan, design a sewer and drainage system, and perform a sanitary sewer inspection. The work was related to the installation of sanitary and storm sewers at a proposed strip plaza.
Upon completion of the project, an adjoining property owner by the name of Wayne Patterson made allegations that he had begun to experience flooding on his property. In that Patterson believed the flooding to be a direct result of the activities on the Zdrilich property, he filed suit against Zdrilich as well as companies involved in altering the property in preparation for the strip plaza. Said complaint was filed in January of 1991 and alleged claims of negligence and nuisance. In response to the complaint, Zdrilich filed a third-party complaint which alleged that appellant, as well as other companies involved in the project, were negligent by failing to properly "engineer and design and draft plans, and construct and supervise and excavate and build the improvements." As such, appellant and the additional companies cited by Zdrilich were argued to be liable for any damages sustained by Patterson.
At all relevant times herein, appellant had in effect two policies of insurance through The Cincinnati Insurance Company, appellee. The policies included a comprehensive general liability policy and a commercial umbrella liability policy. As a result of the claims brought against appellant in the third-party complaint, said complaint was submitted to appellee for its review. On September 16, 1992, appellee advised appellant that it planned on denying coverage and further it would not defend against the third-party complaint. The basis for this denial was that no coverage was available under the policies due to the alleged applicability of certain exclusionary language within said policies which are set forth with specificity in our analysis of the issues. At the time of this notification, appellee directed appellant to the specific language of the policies which excluded recovery on the grounds asserted. Due to the refusal to provide coverage or to defend against the third-party complaint, appellant acquired counsel on its own.
In that appellee had refused to provide coverage under the policy and similarly would not defend against the claims, appellant filed a complaint against appellee on January 8, 1993. In the complaint, appellant sought declaratory judgment as to the parties' rights and obligations under the policies of insurance. Appellant further alleged claims sounding in breach of contract, negligence, and bad faith. Appellee filed its answer to appellant's complaint on February 17, 1993. Subsequently, appellee filed a third-party complaint against Joseph Zdrilich on March 29, 1993 from which a default judgment was ultimately entered against Zdrilich.
On July 10, 1995, appellant filed a motion for summary judgment against appellee alleging that it was entitled to coverage as well as a defense as a matter of law. Appellee filed its response to the summary judgment motion and filed its own cross-motion for summary judgment on September 19, 1995. Appellee alleged that the policies excluded coverage for the claims asserted by appellant and that therefore no duty to defend arose. Following numerous filings by both parties as related to the motions for summary judgment, the trial court granted appellee's motion and overruled appellant's motion on January 25, 1996. This timely appeal followed on February 26, 1996.
Appellant raises three assignments of error on appeal.
 II. ASSIGNMENT OF ERROR NUMBER ONE
Appellant's first assignment of error reads:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN FINDING THAT THE TERMS OF THE COMMERCIAL UMBRELLA LIABILITY POLICY AND THE COMPREHENSIVE GENERAL LIABILITY — MULTI PERIL POLICY EXCLUDE COVERAGE FOR LIABILITY FROM ENGINEERING, DESIGN OR PLAN DRAFTING WORK."
In appellant's initial assignment of error, it argues that the exclusionary language cited to by appellee should not have been utilized by the trial court to exclude coverage under the policies as said language was never received or reviewed. Appellant asserts that the policies which it received from appellee outlining the coverage available did not contain the exclusions which appellee now attempts to utilize to avoid paying on the claims. It is appellant's belief that it cannot be bound by exclusions of which it had no knowledge or warning. In support of this position, appellant relies upon the case of Dietrich v.Peters (1928), 28 Ohio App. 427 which stands for the proposition that a person can only be bound by those documents reviewed and relied upon in entering into a contract;
 A. STANDARD OF REVIEW
In considering a motion for summary judgment, Civ.R. 56 (C) controls and provides that before such a motion may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming
(1994), 68 Ohio St.3d 509, 511. Additionally, the party moving for summary judgment has the responsibility of clearly showing an entitlement to the granting of its motion:
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56 (C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56 (E) to set forth specific facts showing that there is a genuine issue for trial and; if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
Due to the fact that summary judgment is designed to cut short the litigation process, trial courts should award such with caution, resolving doubts and construing evidence in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,360. In that a grant of summary judgment disposes of a case as a matter of law, this court's analysis on appeal is conducted under a de novo standard of review. Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105. Furthermore, the interpretation of a clear and unambiguous insurance contract is a matter of law subject to de novo review by an appellate court. Nationwide Mut.Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108.
 B. APPLICABLE LAW
The fundamental goal in interpreting an insurance policy is to ascertain the intent of the parties and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect. Burris v.Grange Nut. Ins. Co. (1989), 46 Ohio St.3d 84, 89. The language in an insurance policy must be given its plain and ordinary meaning, and only where a contract of insurance is ambiguous and susceptible to more than one interpretation must the policy language be liberally construed in favor of the insured seeking coverage. Dairyland Ins. Co. v. Finch (1987), 32 Ohio St.3d 360,362. This is particularly the case in the use of an exclusion from liability which must be clear and exact in order to be given effect. U.S. Fid. Guar. Co. v. Lightning Rod Mut. Ins. Co.
(1997), 80 Ohio St.3d 584, 586. Furthermore, a court is precluded from rewriting a contract when the intent of the parties is evident, i.e., if the language of the policy's provisions is clear and unambiguous, the court may not resort to construction of the language. Karabin v. State Auto. Mut. Ins. Co. (1984), 10 Ohio St.3d 163,167.
As to the effects of an undelivered insurance policy, the Ohio Supreme Court has previously held that it is inconsequential whether the actual policy has been delivered, "the legal presumption is that the usual policy is to follow." Newark MachineCo. v. Kenton Ins. Co. (1893), 50 Ohio St. 549, 556. In support of its conclusion, the court relied upon the decision of the United States Supreme Court in Eames v. Home Ins. Co. (1877), 94 U.S. 621
which states:
 "It is sufficient if one party proposes to be insured, and the other party agrees to insure, and the subject, the period, the amount, and the rate of insurance is ascertained or understood, and the premium paid if demanded. It will be presumed that they contemplate such form of policy, containing such conditions and limitations as are usual in such cases, or have been used between the parties. This is the sense and reason of the thing, and any contrary requirement should be expressly notified to the party to be affected by it." Id. at 629.
The Fourth District Court of Appeals addressed a case similar to the one at bar and relied upon the above noted authority in its determination of Avemco v. Eaves (1990), 67 Ohio App.3d 563. In Avemco it was argued that actual nor constructive delivery of an insurance policy was required in order for the insurer to rely upon policy exclusions. It was asserted that acceptance of the insurance application itself effectuated the terms of the policy. In reliance upon Newark Machine Co. and Eames, supra the appellate court held that in fact the exclusionary language within the policy was effective despite the failure to deliver the policy.Avemco, supra at 569. In that it was shown that the requirements of Eames were met and the insured clearly intended to provide insurance coverage, the exclusionary language of the policy applied to foreclose any recovery. Id. Particularly persuasive to the court was unrefuted evidence that the exclusion relied upon was standard in the type of policy issued to the insured. Id. It was held that the contested exclusion was common to the policy issued and in fact, such a policy would not have been issued without said exclusion. Id. Therefore, the court concluded that the exclusionary language was applicable and the insurer was entitled to judgment as a matter of law. Id. This holding is consistent with the Ohio Supreme Court's determination that an insurance company has no obligation to its insured or to others harmed by the actions of its insured unless the conduct at issue falls within the scope of coverage as defined in the policy.Gearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34, 36.
 C. ANALYSIS
Various exclusionary provisions were cited by appellee as being in effect in order to exclude coverage under the policies of insurance. Under the comprehensive general liability policy, the following language was relied upon:
 "It is agreed that the insurance does not apply to bodily injury or property damage arising out of the rendering or of the failure to render any professional services by or for the named insured, including
 (1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and
 (2) supervisory, inspection or engineering services."
Additionally, the Broad Form Liability Endorsement attached to the comprehensive general liability policy provided in pertinent part:
"CONTRACTUAL LIABILITY COVERAGE
* * *
 B. The insurance afforded with respect to liability assumed under an incidental contract is subject to the following additional exclusions:
* * *
 2. If the insured is an architect, engineer, or surveyor, to bodily injury or property damage arising out of the rendering of or the failure to render professional services by such insured, including
 a. The preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs, or specifications, and
 b. Supervisory, inspection, or engineering services;"
As to the commercial umbrella liability policy, it is argued that the Exclusion of Professional Liability Endorsement under the policy excludes coverage as follows:
 "It is agreed that such insurance as is provided by the policy for bodily injury, personal injury, or property damage does not apply if such injury or damage arises out of any claim for Professional Liability or Malpractice made against an Insured caused by any negligent act, error, or omission of an Insured or any other person for whose acts an Insured is legally liable in the conduct of any business, trade, profession, municipal service, such as, but not limited to, law enforcement departments, fire departments (including volunteer), health departments, ambulance service, paramedics, lawyers, or judges."
Although appellant claims in its brief that the documents it received contained no exclusions as related to surveying, engineering or drafting work, it should be noted that attached to its original complaint was the language set forth above in the Broad Form Liability Endorsement.
Based upon the authority of Newark Machine Co., Eames andAvemco, supra, it cannot be held that the trial court erred in finding that the exclusionary language as cited by appellee prevented coverage under the applicable policies. A review of the record clearly indicates that appellant proposed to be insured and appellee accepted by providing insurance under two policies of insurance. Both of said policies went into effect in October of 1987, some five years prior to the denial of coverage. Additionally, the declarations pages as well as the policies reflect the subject, period, amount and rate of insurance which is to be provided under the applicable policies. As such, the requirements set forth in Eames and adopted by Newark Machine Co.
and Avemco have been fulfilled. Therefore, even if the policies were not actually or constructively delivered, it can be presumed that the form of the policy would contain the conditions and limitations as are usual in similar cases.
Even if appellee did not receive the exclusionary language cited to by appellee, it can be presumed that the exclusionary language of the policies would be similar to that of other such policies. As in Avemco, supra appellee's argument that these exclusions are standard in the industry is unrefuted. Appellee states at multiple junctures throughout the course of the proceedings that such exclusions are common in comprehensive general liability and commercial umbrella liability policies. As appellee stated and as indicated in the trial court's judgment entry, errors and omissions policies are utilized to protect from professional types of claims rather than the policies purchased by appellant. The policies purchased by appellant are solely to cover nonprofessional hazards and risks associated with one's business. In support of this proposition, appellee cites toGeneral Acc. Ins. Co. v. Insurance Co. of North America (1990),69 Ohio App.3d 52; Zanco v. Michigan Mut. Ins. Co. (1984),11 Ohio St.3d 114; as well as numerous unreported cases. Specifically, in General Acc. Ins. Co., supra the appellate court found that exclusionary language in comprehensive liability policies was appropriate to prevent coverage for errors arising out of professional services. Id. at 61. As such, the trial court properly found that the exclusionary language was applicable, as it was typical in similar policies.
Appellant's first assignment of error is without merit.
 III. ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error reads:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN FINDING THAT NO DUTY TO DEFEND EXISTED UNDER THE TERMS OF THE APPLICABLE INSURANCE POLICIES."
Under appellant's second assignment of error, it is asserted that appellee's obligation to defend exists not only if the complaint raises a claim for which coverage applies but also when claims are alleged which potentially fall within the scope of coverage. In that appellant argues that the third-party complaint raised allegations for which appellee was mandated to cover and defend against, it was a breach of appellee's contractual duty to refuse to defend. It is further argued that although some allegations in the third-party complaint may not have been covered by the policies, some allegations in fact did fall within the scope of coverage and thus gave rise to a duty to defend. Lastly, appellant contends that even if the exclusionary language is held to be part of the policy, it refers only to exclusions from coverage and not exclusions from the duty to defend. Therefore, appellant believes the policy is vague in its application as to the duty to defend and the policy should be construed to exclude only the obligation to indemnify.
 A. APPLICABLE LAW
It is well-settled that an insurance company has a duty to defend its insured against an action if the complaint alleges conduct that falls within the scope of coverage of the applicable policy. Motorists Mut. Ins. Co. v. Trainor (1973), 33 Ohio St.2d 41. An insurer's duty to defend also extends to those instances in which allegations within the complaint state a claim which mayarguably or potentially be within the policy coverage or where there is some doubt as to whether a theory of recovery falls within the scope of coverage. Willoughby Hills v. Cincinnati Ins.Co. (1984), 9 Ohio St.3d 177, 180. This duty to defend exists even though the underlying action may eventually produce a result which in fact does not trigger a duty to indemnify under the policy. Preferred Mut. Ins. Co. v. Thompson (1986), 23 Ohio St.3d 78,80.
While this authority demonstrates that an insurer's duty to defend is quite broad, it nonetheless is not all encompassing. As this court previously noted in Westfield Ins. Co. v. JarrettReclamation Serv., Inc. (1996), 114 Ohio App.3d 492, the duty to defend does not extend to those instances in which "the complaint contains no allegation that states a claim potentially or arguably within the policy coverage." Id. at 499. An insurer's duty to defend will beheld to have been absolved if it is determined that there is no possibility of coverage under the policy as related to the allegations in the complaint. Wedge Products. Inc. v.Hartford Equity Sales Co. (1987), 31 Ohio St.3d 65, 67-68. Similarly, if allegations in a complaint raise claims which are excluded under the policies of insurance, the duty to defend is extinguished. W. Lyman Case Co. v. Nat'l. City Corp. (1996),76 Ohio St.3d 345, 349 citing Zanco. Inc. v. Michigan Mut. Ins. Co. (1984), 11 Ohio St.3d 114. As stated under appellant's first assignment of error, an insurance company has no obligation to its insured unless the conduct at issue falls within the scope of coverage. Gearing, supra.
 B. ANALYSIS
The third-party complaint filed against appellant which allegedly gave rise to the duty to defend states in pertinent part at paragraph five:
 "* * * Third-Party Defendants Technical Land Consultants, Dave Sugar dba Dave Sugar Contracting Company and Doug Susany dba S.E.I., Inc. were negligent and breached their contract by failing to engineer and design and draft plans, and construct and supervise and excavate and build the improvements to their real estate immediately adjacent to the south of Plaintiff's property as afore set forth."
As discussed in addressing appellant's first assignment of error, the exclusionary language relied upon by appellee as well as by the trial court was correctly held to be part of the policy and thus applicable to the claims in question. Said exclusionary language contained in the comprehensive general liability policy specifically excluded damage arising from professional services such as "the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications" or arising out of "supervisory, inspection or engineering services." The commercial umbrella liability policy provided similar language excluding from coverage any damages caused by any negligent act, error or omission which was related to the rendering of professional services.
Based upon this language, it cannot be held that any claims contained within the third-party complaint arguably or potentially fell within the scope of coverage. In paragraph five of the third-party complaint, Zdrilich alleged negligence and breach of contract actions against appellant in addition to two other third-party defendants. The allegations against the three parties taken as a whole related to the failure to properly "engineer and design and draft plans, and construct and supervise and excavate and build the improvements." The exclusionary language contained in the policies specifically excludes coverage as related to the claims of failing to engineer, design and draft plans. Furthermore, the exclusions specifically exclude any professional services as related to supervising, inspecting or engineering activities.
All that arguably remains of the third-party complaint's claims are those relating to the physical acts of constructing, building and excavating the improvements. Such activities are not those engaged in by appellant but rather are functions of the remaining third-party defendants. It is unrefuted that appellant operated a surveying and civil engineering firm. This is evident from the policies attached to the original declaratory judgment complaint which indicate that the description of the hazards appellant is involved in entail surveying, engineering and draftsman work. Coverage was only granted for non-professional hazards relating to these activities and not to construction type employment.
This conclusion is supported by reference to appellant's answers to appellee's interrogatories which were attached to "Plaintiff s [Appellant's] Response to Defendant's [Appellee's] Cross-Motion For Summary Judgment." In response to an interrogatory inquiring into the nature of the contract between appellant and Zdrilich, it was stated that appellant was hired to "survey, engineer, and draft plans for both sanitary and storm sewers, get approval of plans and perform certain connected duties during construction." As previously mentioned, surveying, engineering and drafting activities are specifically precluded under the policy. Any activities connected to such services would similarly be excluded as they relate to surveying, engineering and drafting which are excluded from coverage. Notably absent from this answer is that appellant was involved in the construction or building of the improvements. In that all activities related to services which were excluded under the policy, the third-party complaint cannot be held to allege claims potentially or arguably within the scope of coverage.
Consistent with the holdings in W. Lyman Case Co., Gearing
and Wedge Products. Inc., supra, appellee had no duty to defend against the allegations contained in the third-party complaint. As indicated, the exclusionary language contained in the policies essentially prevented any recovery under the policies and thereby extinguished appellee's duty to defend. Although appellant attempts to persuade this court that the exclusionary language applied only to the duty to indemnify, case law clearly indicates that once an insurer determines that there was no possibility of recovery under a policy of insurance, its obligations to the insured ceased to exist.
Appellant's second assignment of error is therefore without merit.
 IV. ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third and final assignment of error reads:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN FINDING THAT APPELLANTS HAD NOT ALLEGED A CLAIM AGAINST APPELLEE FOR THE FAILURE TO PROVIDE OR PROCURE THE INSURANCE COVERAGE REQUIRED BY APPELLANTS."
In appellant's final assignment of error it is argued that irrespective of the trial court's finding that appellee had no duty to defend or indemnify, it had also sufficiently plead in its original complaint claims for breach of contract, negligence and "failure to provide the requested insurance terms." Since appellant believes these claims were also at issue, it asserts that the trial court erred by holding that the complaint did not state claims other than a determination of the obligations of appellee under the insurance contract. Therefore, appellant argues that the case should be remanded to the trial court for further proceedings in regards to the additional actions alleged in the complaint.
 A. APPLICABLE LAW
General rules relating to pleadings are set forth in Civ.R. 8 (A) which states in pertinent part:
 "A pleading that sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled."
These requirements have been interpreted by the Ohio Supreme Court in Illinois Controls, Inc. v. Langham (1994), 70 Ohio St.3d 512
:
 "Civ.R. 8 (A) requires only that a pleading contain a short and plain statement of the circumstances entitling the party to relief. A party is not required to plead the legal theory of recovery or the consequences which naturally flow by operation of law from the legal relationships of the parties."
While Civ.R. 8 (A) provides that a pleading need not be detailed or set forth all elements of a claim, it still must be pleaded so that the individual or entity being sued has adequate notice of the nature of the action being alleged. Saylor v.Providence Hosp. (1996), 113 Ohio App.3d 1, 4 citing Fancher v.Fancher (1982), 8 Ohio App.3d 79.
 B. ANALYSIS
In the trial court's judgment entry disposing of the case at bar, the trial judge indicated:
 "Plaintiff has not alleged liability of Defendants based on a failure to provide or procure the insurance coverage required by Plaintiffs.
 The sole issue before this Court is therefore the obligations of Defendant under the policy language."
This conclusion as to the claims which had been brought before the court by appellant was based upon the following language as set forth in appellant's original complaint. Count two of the complaint reads in pertinent part at paragraph nine:
 "Defendant has breached its contracts, which are in the form of the insurance policies attached hereto and incorporated herein as Exhibit `A' and Exhibit `B' respectively, and wrongfully refused to defend Plaintiffs and pay, negotiate, and/or settle the litigation pending against the Plaintiffs."
Count three of appellant's complaint reads in pertinent part at paragraph thirteen:
 "The Plaintiffs have properly notified the Defendant of the litigation pending and have requested the Defendant to honor the insurance policies and defend the Plaintiffs, but the Defendant has breached its duty to defend and has further breached its other duties required by the insurance policies."
Count four of appellant's complaint reads in pertinent part at paragraph fifteen:
 "The failure and refusal of Defendant to defend the Plaintiffs and the further failure and refusal of Defendant to pay, negotiate, and/or settle the litigation pending against Plaintiffs in defiance of clearly established law constitutes a breach of its duty of good faith to Plaintiffs and is based upon actual malice, fraud or insult."
The trial court held that appellant had not based appellee's liability on a failure to provide or procure the requested insurance coverage and consequently, the trial court limited its analysis to appellee's obligations under the policy language. Although appellant asserts that it has properly alleged additional claims which warrant further consideration by the trial court, such assertions are unsupported by fact or law. A review of the complaint and the allegations as outlined above reveals that any claims proposed by appellant were dependent upon appellee's obligation to defend and to provide coverage. By determining that appellee owed no duty to defend or indemnify under the applicable insurance policies, the trial court simultaneously disposed of appellant's additional claims. Where a duty to defend has not been established, it certainly cannot be held that appellee was negligent, breached a contract or acted in bad faith when it refused to defend or provide coverage.
Furthermore, although appellant contends that it alleged a claim for failure to provide the requested insurance terms, a review of the complaint and its claims does not reveal that any such action was alleged. As indicated, all claims in appellant's complaint relate and are dependent upon the duty to defend and indemnify The language in these claims in no way relates to the failure to provide the requested insurance terms. Having failed to provide any statement as to the alleged claim, it cannot be held that appellee was put on notice of said claim. As such, appellant's contentions are unsupported and without merit.
Based upon the analysis herein, the trial court did not err in its determination in the case sub judice. Appellee was entitled to judgment as a matter of law and thus, appellant's appeal lacks merit.
For the foregoing reasons, the decision of the trial court is hereby affirmed in its entirety.
Cox, P. J., concurs in judgment only.
Waite, J., concurs.
APPROVED:
 ___________________________________ JOSEPH J. VUKOVICH, JUDGE